[L. A. No. 18544. In Bank. Apr. 19, 1943.]

M. (MANASSE) STEPHEN LIBARIAN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

M. Stephen Libarian, in pro per., for Petitioner.

Josephine M. Elmore and Jerold E. Weil for Respondent.

THE COURT.—In May, 1942, the petitioner, admitted to practice law in this state in 1932, was charged with violations of his oath and duties as an attorney within the meaning of rule 2 of the Rules of Professional Conduct. After hearings before the local administrative committee and the Board

of Governors it was found that he had intentionally solicited professional business by advertising in violation of the rule. It was rcommended that he be suspended from the practice of the law for a period of three months. The petitioner filed the present proceeding for a review of the findings and recommendation.

The petitioner was born in Turkey in 1892 of Armenian parents. He is a graduate of the law schools of the University of Istamboul, Turkey, of the University of Paris, and of the Detroit College of Law. He practiced law in Constantinople, Turkey, and in Detroit, Michigan, before his admission to the California Bar. He was naturalized in Michigan in 1928.

In addition to the facts charged which form the basis of the findings in the present proceeding, it was also considered by the committee and the board that the petitioner had received a public reprimand in a prior proceeding involving somewhat similar facts. In July, 1941, he had been charged with the violation of rule 2 in having circulated by door to door distribution several thousands of cards designating himself as attorney and notary, announcing the removal of his law office, and listing fees charged for five items of notarial and legal work. He admitted the charge, but urged as excuse or in mitigation the difficulty that he was then experiencing in earning sufficient to pay rent and to support his wife and two year old child, the probability that his wife, who was then in the East, would not return to him if he was suspended, the showing that he had not committed any act of dishonesty, the "solemn promise" made in his answer and to the committee. A public reprimand only was then administered.

Additional facts which were not disclosed at the time of that hearing are the following: In 1941, from January to April both inclusive, the petitioner mailed several hundred letters announcing the removal of his office and listing sixteen items of legal services, the reduced fees charged therefor, and the fact that 25 cents was the charge for affixing his seal as a notary. The petitioner maintained his law office at his residence. On June 30, 1941, because of inability to pay rent, he again removed his office and home to a number on the same street about ten doors from his former residence. A large sign reading on each side "INCOME TAX RETURNS $1.00 and UP," which had been maintained on the roof of his former residence was placed on this new home,

and in January, 1942, was replaced by a still larger sign measuring four by eight feet, reading "INCOME TAX RETURNS 50c and up," installed on the top of the building. Another similar sign was maintained on the office, but upon removal to the new address was changed to read "INCOME TAX RETURNS 50c BIRTH CERTIFICATES." It was removed on April 15, 1942. The petitioner also maintained a large sign "LAW OFFICE Notary fee 25c," which was also removed on April 15, 1942. Across the face of the building a large sign gave the information during the income tax preparation period that the office was open 24 hours a day, 7 days a week, notary fees 25c, and the telephone number. That sign was replaced on April 15, 1942, with as large or a larger sign advertising "Birth Certificate Service Office Hours 8:00 a. m. to 10:00 p. m. 7 days a week Notary fee 25c" and the telephone number. On August 16, 1942, it was removed and replaced by another similar sign including petitioner's name as notary. He also maintained a 3 by 5 foot sign on the ground to the left of the largest sign, bearing the legend, "M. Stephen Libarian, LAWYER, Notary fee 25c." That sign was removed on April 15, 1942. The photographic evidence shows that the front of the petitioner's residence was almost entirely covered by these signs. The petitioner endeavored to excuse their size by the fact that the thoroughfare on which he lived was one of heavy traffic and large lettering was essential to catch the eye of the passing motorist. The petitioner still maintains the large sign across the front of his residence, but with his wife's name substituted in the place of his own as notary, and the sign on the top of the building advertising "Income Tax Returns 50c and up." All other signs have been removed. In the petitioner's office various certificates are displayed showing his profession as attorney at law. He invokes rule 36 of the Rules of Procedure of the State Bar which he contends is a bar to the imposition of discipline for acts which were committed at or before the time of the prior disciplinary proceeding. He also contends that he should be permitted to advertise any services which may be said to be distinct from legal services in any way deemed by him to be expedient.

Neither contention is meritorious. Under the rule invoked an attorney may not be disciplined twice for the same acts of misconduct. But the fact that the attorney did not, upon a former proceeding, disclose all of the acts

for which he might be disciplined, will not preclude a subsequent hearing and imposition of disciplinary measures in respect to the undisclosed acts. (*Prime* v. *State Bar,* 18 Cal. 2d 56 [112 P.2d 881].)

 The petitioner repeatedly urges upon this court that he has never told an untruth nor broken a promise. We have no reason to doubt the petitioner's effort to comply with the letter of the promise he made to the committee. We are unable to find in the record that on the prior proceeding the petitioner made any promise other than "never to distribute such cards for the remainder of his life as an attorney at law." The petitioner states that had he been asked on the former hearing the question whether he had indulged in other forms or methods of advertising than the distribution of the cards, he would have answered the question truthfully and all of the subsequent proceedings would have become unnecessary. It is quite possible also, that had the petitioner at that time disclosed to the committee the other forms of advertising he might have received the same lenient recommendation of the committee, and the subsequent hearing and disciplinary action might have been obviated.

The petitioner contends that his income from legal services is but a fourth of his entire income; that until he advertised the reduced notarial fees he was unable to make sufficient money for subsistence, but that by employing the methods of advertising noted, he has succeeded in making a good living.

If the petitioner should choose to continue as a practitioner at the bar of this state, he must comply with the standards of the legal profession. He should appreciate that when he is licensed to practice as an attorney at law, the professional services that he thus performs are performed by him as an attorney, whether or not some of the services could also be rendered by one licensed in a different profession. One who is licensed to practice as an attorney in this state must conform to the professional standards in whatever capacity he may be acting in a particular matter. (*Jacobs* v. *State Bar,* 219 Cal. 59 [25 P.2d 401].) As a practicing attorney, he may not solicit employment nor may he advertise contrary to the rules. The restrictions, limitations, and permissible conduct in those respects are familiar both to the lawyer and to the layman. They are published in the Code of Ethics and Rules promulgated by The State Bar, and they do not require reiteration here. It is quite apparent,

without extended discussion, that the petitioner has not complied with the applicable code provisions and rule. (See *Barton* v. *State Bar*, 209 Cal. 677, 683 [289 P. 818]; *Mayer* v. *State* Bar, 2 Cal.2d 71, 74 [39 P.2d 206].) In making these observations we are not to be understood as intimating that the methods employed by the petitioner would be acceptable in any other profession which may permit performance of any of the services offered. In any event, during the period of suspension from the practice of the law, the petitioner may not perform any legal services whatsoever, nor may he hold himself out as an attorney either orally or in writing, nor may he maintain or display, at or in his home, his office, or elsewhere, any sign, certificate, or other insignia indicating a connection with the profession of law. The foregoing sufficiently answers all of the petitioner's contentions.

Considering all of the circumstances, we are of the opinion that the recommendation of the committee and the Board of Governors should be sustained.

It is ordered that the petitioner be suspended from the practice of law in this state for a period of three months commencing from and after the filing of this order.