[No. S005856. Oct. 5, 1989.]

MARK WALDEN WELLER, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Leonard Chaitin for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Major Williams, Jr., for Respondent.

**OPINION**

**THE COURT.**—The Review Department of the State Bar Court has recommended that petitioner Mark Walden Weller be suspended from the practice of law for five years, that the execution of suspension be stayed, and that petitioner be placed on probation on various conditions, including two years' actual suspension. Petitioner asserts that a two-year actual suspension is unwarranted. Instead, he suggests imposition of an 18-month suspension, stayed, with no period of actual suspension.

As we shall explain, in light of the nature of petitioner's misconduct and his past disciplinary record, we conclude that not only is the recommended two-year actual suspension not excessive, but that a period of three years' actual suspension is warranted and should be imposed.

## FACTS

Petitioner was admitted to the practice of law in California in May 1979. He has been disciplined twice before. In June 1985, petitioner received a private reproval for engaging in a 1981 business transaction with a client without first allowing the client a reasonable opportunity to seek independent legal counsel on the matter. In August 1985, petitioner received a stayed, one-year suspension from the practice of law for a February 1982 misappropriation of funds from a client trust account.

In both matters, the record reflected in mitigation that petitioner was undergoing serious marital and family problems at the time, and that he had taken steps to prevent any recurrence of his failings. In language identical in all but a few minor respects to that employed in the stipulation approved in the first proceeding, the hearing panel decision in the second case specifically noted: "[Petitioner] has cooperated with the State Bar and has exhibited full and complete candor in all his dealing [sic] with the State Bar. [Petitioner] has acknowledged his wrongdoing and has expressed his remorse and intent to avoid difficulties such as this in the future. [Petitioner] has relocated his practice, has restructured his practice and has taken control of it and of his life."

The present proceeding involves two further incidents of misappropriation of client trust-account funds, one spanning from December 1982 to February 1985 and the other from February 1984 to June 1985.

In the earlier of these two incidents, petitioner was retained to represent Steven Bernardi in a personal injury matter. In December 1982, he received on his client's behalf a settlement check in the amount of $15,000. Petitioner was entitled to a $5,000 fee. He told Bernardi he would hold the remaining $10,000 in his client trust account to finance further litigation in the case. Soon the funds held in the account were far less than the amount to which Bernardi was entitled. For example, as of January 1983, petitioner's trust-account balance was $1,380.40. Only $979.74 had been expended on Bernardi's behalf, however, and the balance should have been at least $9,020.26. This pattern continued over the next year as petitioner, by his own admission, misused his client's funds for his own personal and office expenses. In February 1985, petitioner finally paid $5,885.11 to Bernardi, who retained new counsel shortly thereafter.

In the second incident, petitioner was retained by Jesse and Patricia Ramos in a hospital bill collection dispute. He successfully settled the matter, and in February 1984 received two checks totaling $6,316.36 from his clients' insurer. Petitioner told his clients he would use those funds to pay

the hospital bill. He did not do so. After depositing the funds in his client trust account, he proceeded to misuse them for his personal needs. By December 3, 1984, only $50 remained in the account, and the hospital bill was still unpaid. In March 1985, Jesse Ramos's paychecks were garnished pursuant to a default judgment on the bill. After being notified of the garnishment, petitioner reimbursed the Ramoses each week for the amount withheld, and eventually resolved the matter.

In the middle of 1985, both Bernardi and the Ramoses filed complaints with the State Bar. On the above facts, both the hearing panel and the review department found that petitioner had violated his oath and duties as an attorney.

In adopting the hearing panel's findings that petitioner had misappropriated at least $7,631.03 from Bernardi and had twice given Bernardi checks drawn on his client trust account which were dishonored by the bank for insufficient funds, the review department made these determinations: "[Petitioner] misappropriated trust funds and knowingly issued checks without sufficient funds in violation of Business and Professions Code section 6106, [petitioner] wilfully failed to maintain trust funds in a proper trust account in wilful violation of rule 8-101(A)(2), Rules of Professional Conduct of the State Bar, [petitioner] wilfully failed to promptly render appropriate accounts to his client as to trust funds in [his] possession, in wilful violation of rule 8-101(B)(3), Rules of Professional Conduct of the State Bar and [petitioner] wilfully failed to promptly pay or deliver to the client the trust funds the client was entitled to receive, in wilful violation of rule 8-101(B)(4), Rules of Professional Conduct of the State Bar."

With regard to the Ramoses, the review department found as follows: "[Petitioner] misappropriated trust funds and engaged in dishonest conduct [in] violation of Business and Professions Code section 6106, [petitioner] wilfully failed to maintain trust funds in a proper trust account in wilful violation of rule 8-101(A)(2), Rules of Professional Conduct of the State Bar and [petitioner] wilfully failed to promptly pay or deliver to the client the trust funds the client was entitled to receive, in wilful violation of rule 8-101(B)(4), Rules of Professional Conduct of the State Bar." The review department further determined that, as to petitioner's representation of the Ramoses, he had "wilfully and repeatedly failed to perform legal services competently in wilful violation of rule 6-101, Rules of Professional Conduct of the State Bar."

The hearing panel recommended that petitioner be suspended from the practice of law for five years, stayed, and that he be placed on probation for that period on a number of conditions, including an actual suspension of

eighteen months. In examining the matter at the request of the State Bar examiner, the review department recommended an increase in the period of actual suspension to two years, by a vote of seven to six, two members not participating. The closeness of that vote is potentially misleading, however, without consideration of the reasons given by the different members of the review department to explain their varying views.

Of the seven members voting in favor of the recommended discipline, three specified they were "strongly influenced in not voting for *more* discipline by the fact that the State Bar Examiner asked for no more than two years' actual suspension even after being made aware of both priors and that the State Bar's request for hearing before the Review Department on its face was limited to the issue of adequacy of discipline in terms of restitution." (Italics added.) Of the six members voting against the recommended discipline, two noted that petitioner's conduct would have warranted disbarment except for the mitigating factors present in the case, and that they "would impose not less than *three* (3) years actual suspension." (Italics added.) The remaining four members voting against the recommended discipline were even more emphatic: "The record discloses multiple acts of misconduct, many involving misappropriation of trust funds. [Petitioner's] misconduct in the *Ramos* matter occurred after other State Bar matters were pending. Mitigating factors were dissipated long before these offenses. On these facts, *disbarment* is the only appropriate discipline and the reasons underlying the State Bar Examiner's recommendation are incomprehensible." (Italics added.)

In sum, the six members who voted against the recommended discipline would have imposed more discipline than that recommended, and three of the seven who voted in favor of the recommended discipline apparently did so primarily because the State Bar itself had not sought either petitioner's disbarment or a greater period of actual suspension. Against this background, we issued a writ of review at petitioner's request. We now exercise our independent judgment as to the appropriate disposition in this case. (See, e.g., *Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 [207 Cal.Rptr. 302, 688 P.2d 911].)

## DISCUSSION

In his petition for writ of review, petitioner concedes his misconduct warrants some measure of discipline, and he does not appear to dispute the factual findings as to his misappropriation of client trust-account funds. Indeed, the only argument advanced in his petition reads, in its entirety, as follows: "The recommendations of discipline by the Review Department are erroneous, not supported by the evidence, and are against the law. In partic-

ular, petitioner had submitted evidence to the hearing panel and to the Review Department substantiating mitigation. However, neither the hearing panel nor the review department considered any of the facts regarding mitigation in its decision." ■ ■ ■ ■ Thus, the only contention properly presented by the petition is whether the recommended discipline is appropriate in view of the mitigating evidence submitted by petitioner.[1]

Petitioner's assertion that the review department failed to consider *"any of the facts regarding mitigation"* (italics added) is inaccurate. Although neither the hearing panel nor the review department set forth findings as to all of the evidence proffered by petitioner in mitigation, each body's decision explicitly referred to the existence of mitigating factors. Additionally, the statements issued by the members of the review department to explain their different views of the case plainly reveal that all took into account the mitigating evidence petitioner had presented. Because the findings do not fully address all of the mitigating evidence, however, we summarize the pertinent evidence.

Petitioner's showing in mitigation was of three types. First, he presented evidence that he had voluntarily made restitution to the clients in both incidents prior to the State Bar's issuance of a notice to show cause on the clients' complaints. Second, he attempted to show that, while he was under great emotional strain at the time of the events in question, he has taken significant steps to improve his office practices and to preclude a repetition of these events. Third, he presented testimonials from a number of witnesses as to their regard for his moral character.

---

[1] In a supplemental brief filed after new counsel was substituted in place of the attorney who had filed the petition for writ of review, petitioner attempts to raise an additional challenge to the review department's decision. Petitioner asserts that because this case and the proceeding which led to our August 1985 order involve misappropriations from the same client trust account and because he had told the State Bar investigators in the earlier proceeding that the trust account was not in proper order, the present proceeding should be barred by res judicata or laches.

It appears that this contention is not properly before this court inasmuch as it was not raised either before the State Bar or in the petition for review. (See Cal. Rules of Court, rule 952(b); *Bluestein* v. *State Bar* (1974) 13 Cal.3d 162, 170 & fn. 6 [118 Cal.Rptr. 175, 529 P.2d 599, 91 A.L.R.3d 570].) In any event, the argument lacks merit. Petitioner's misconduct did not consist of a single failure to manage his client trust account properly, but rather involved the misappropriation of funds from three separate clients. There is simply no support for petitioner's assertion that the State Bar "split a cause of action" by bringing separate charges against petitioner for misappropriating separate funds from separate clients on separate occasions. Contrary to petitioner's theory, the State Bar is neither obligated to defer action on a pending complaint until it has determined whether the attorney has misused other clients' funds from a particular trust account, nor is it precluded from pursuing additional charges if further misconduct relating to the account comes to light after proceedings have commenced on an earlier complaint. In short, the August 1985 order in no way immunized petitioner from the imposition of additional discipline for incidents of misconduct not considered in the earlier proceeding. (See, e.g., *Libarian* v. *State Bar* (1943) 21 Cal.2d 862, 864-865 [136 P.2d 321].)

With respect to the first category of mitigating evidence, the hearing panel made specific findings. It determined that petitioner had made full restitution to Bernardi prior to his filing of a complaint with the State Bar, and that petitioner had made full restitutition to the Ramoses after they had filed a complaint with the State Bar but before the State Bar's issuance of a notice to show cause on the complaint. The review department's decision, though somewhat ambiguous on this point, apparently concurred generally in the hearing panel's determination.[2] Since petitioner's actions with regard to restitution reflect a recognition of his misconduct and an attempt to atone in some manner for his actions, they properly constitute mitigating circumstances. (See Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct [hereafter Standards for Attorney Sanctions], std. 1.2(e)(vii).)

The second category of mitigating evidence concerns petitioner's claim that his misconduct occurred during a period in which he was under a great deal of emotional stress and that he has since taken significant steps to prevent a recurrence of such misconduct. The evidence indicates that between November 1980 and October 1982, petitioner experienced a series of tragic family crises. In November 1980, his ailing mother moved in with him; two months later, he and his wife separated and they were divorced in August 1981. Petitioner's sister, who suffered from leukemia, died in September 1982 and his mother died of cancer the following month. Petitioner maintains that his misconduct was a product of these events, and he points to a number of steps that he took after these incidents to avoid a recurrence of his mishandling of his legal obligations. In particular, he asserts that (1) his second wife, who has a banking background and a paralegal certificate, has helped him gain control of his affairs; (2) he has received guidance and counseling in office management from an accountant through a program offered by the Small Business Administration; and (3) he has relocated his practice and has regained control of his life.

Petitioner relied on this same evidence in mitigation in his two prior disciplinary proceedings, proceedings which concerned misconduct which petitioner had committed contemporaneously with the tragic personal incidents recounted above; in those proceedings, this mitigating evidence was given considerable weight. In the case before us, however, the misconduct at issue continued until early 1985, well after petitioner had ostensibly implemented the significant changes in his practice and, indeed, after petitioner

---

[2] The review department adopted the hearing panel's findings that petitioner had made full restitution to both Bernardi and the Ramoses, but also included in its decision a statement advising this court that "it did not recommend that restitution be required because the record does not permit ascertainment of the precise amount of restitution which [petitioner] might owe."

had specifically represented to the State Bar, in the earlier proceedings, that he had overcome his earlier problems by virtue of these changes. Because the present charges concern misconduct which petitioner continued to engage in during the very pendency of the earlier State Bar proceedings, we conclude that no mitigation is warranted on the basis of this evidence.

Finally, petitioner presented the testimony of three character witnesses and later offered to show that a number of judges, attorneys and private citizens respected his skills and trusted him. He made no effort, however, to demonstrate that these persons were "aware of the full extent of [his] misconduct" (Stds. for Atty. Sanctions, std. 1.2(e)(vi)) and retained their opinions in light of such full awareness. Absent such a showing, petitioner's testimonials are less persuasive than they otherwise might be.

■ Petitioner's voluntary restitution of the funds he misappropriated from his clients and the character evidence presented on his behalf are entitled to some weight as mitigating circumstances. Nonetheless, as we shall explain, in light of the nature of petitioner's misconduct and his prior record, there is no merit in petitioner's assertion that the discipline recommended by the review department is excessive.

Our decisions have long made clear that an attorney's misappropriation of a client's funds is misconduct of the most serious order which will frequently justify disbarment. (See, e.g., *Chang* v. *State Bar* (1989) 49 Cal.3d 114, 128 [260 Cal.Rptr. 280, 775 P.2d 1049]; *Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 656-658 [247 Cal.Rptr. 608, 754 P.2d 1104]. See generally 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 385, pp. 434-436 and cases cited. See also Stds. for Atty. Sanctions, std. 2.2(a).) In this case, petitioner was found to have misappropriated a substantial sum of money from two separate clients over a two-year period. In addition, he has a prior record which includes a separate instance of misappropriation from a third client. Absent mitigating evidence, this course of conduct would almost certainly have warranted disbarment. (See, e.g., *Chang* v. *State Bar, supra,* 49 Cal.3d 114, 128; *Kelly* v. *State Bar, supra,* 45 Cal.3d 649, 657.)

The review department concluded that in light of petitioner's mitigating evidence and the recommendations of the State Bar examiner, a sanction of five years' probation, including two years' actual suspension, was appropriate. While we agree with the review department's conclusion that a substantial period of actual suspension is warranted, in our view the nature of the misconduct in question here, combined with petitioner's prior record of similar misconduct, calls for an even greater period of actual suspension than the review department has recommended. Under all the circum-

stances, we conclude that a period of three years' actual suspension should be imposed.

It is therefore ordered that petitioner Mark Walden Weller be suspended from the practice of law in the State of California for a period of five years, that execution of that suspension be stayed, and that he be placed on probation for five years on condition that he be actually suspended from the practice of law for the first three years and comply with all of the other conditions of probation set forth by the review department in its December 16, 1987, resolution. He is also ordered to comply with rule 955, California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, of the date this order is effective; willful failure to comply with rule 955 is a criminal offense. (See Bus. & Prof. Code, § 6126, subd. (c).) This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)