[No. S008614. Feb. 26, 1990.]

BRUCE A. FRIEDMAN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Bruce A. Friedman, in pro. per., and Ellen A. Pansky for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Major Williams, Jr., and Susan L. Levanthal for Respondent.

## OPINION

**THE COURT.**\*—In this proceeding under section 6083, subdivision (a), of the Business and Professions Code and rule 952(a) of the California Rules of Court, we review the decision of the State Bar recommending that petitioner Bruce A. Friedman be disbarred as discipline for professional misconduct.[1]

A hearing panel of the State Bar Court (hereafter the hearing panel or panel) recommended that petitioner should be suspended from the practice of law for three years, his suspension should be stayed, and he should be placed on probation for four years on conditions including actual suspension for one year. The Review Department of the State Bar Court (hereafter the review department or department) recommended that petitioner should be disbarred.

As we shall explain, we conclude that in view of the purpose of professional discipline, viz., the protection of the public, the courts, and the legal profession, the hearing panel's recommendation is inadequate and the review department's is excessive. We shall therefore suspend petitioner from the practice of law for five years, stay his suspension, and place him on probation for five years on conditions including actual suspension for three years.

## I. FACTS

Petitioner was admitted to the practice of law in this state as a member of the State Bar on January 11, 1961. He has no prior record of discipline.

On January 30, 1987, the Office of Trial Counsel of the State Bar filed in the Hearing Department of the State Bar Court a notice to show cause charging petitioner with two counts of professional misconduct relating to matters involving Leroy E. Cooper, Sr. (Count I), and Elizabeth-Avila Patterson (Count II).

An evidentiary hearing was held before a panel consisting of a retired judge. The examiner for the Office of Trial Counsel of the State Bar called

---

\*Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., Kennard, J., and Kaufman, J.†

---

†Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairperson of the Judicial Council.

[1] New Rules of Professional Conduct became effective May 27, 1989. Unless otherwise indicated, all "rule" citations refer to the former Rules of Professional Conduct, effective January 1, 1975, as they were in effect at the times relevant herein.

several witnesses, including Cooper, his wife, and their son, Patterson, and petitioner himself. Petitioner called himself and his secretary as his only witnesses.

The hearing panel rendered a decision and subsequently filed clarifications and amendments. It made findings of fact and conclusions of law. It also recommended discipline consisting of suspension for three years, with a stay of suspension and imposition of probation for four years on conditions including actual suspension for one year.

At the separate request of petitioner and the examiner, the review department considered the hearing panel's decision. The department unanimously modified the panel's findings of fact and conclusions of law in minor respects, and adopted the findings and conclusions as so modified. The modifications are not noteworthy. Read in light of the record, the findings and conclusions are in substance as follows.

With regard to Count I, in July 1981 petitioner was retained by Leroy E. Cooper, Sr., to represent him in (among other matters) a pending personal injury action on a contingent fee basis. Petitioner substituted into the case in place of Attorney Fred Rosenbaum; he agreed to reimburse Rosenbaum $517.90 for costs and to negotiate a reasonable fee to cover Rosenbaum's work on the matter. It is unclear whether the retainer agreement between petitioner and Cooper provided for a fee of $33\frac{1}{3}$ percent of gross recovery and was oral (as Cooper testified), or provided for a fee of 40 percent of gross recovery and was written (as petitioner testified). But it was clear that petitioner did not provide Cooper with a copy of a written retainer agreement. Petitioner subsequently agreed to withhold a sum from any proceeds of the action to discharge a lien for medical services in favor of Cooper's physician, J. DeWitt Fox, M.D.

On or about April 1, 1983, Cooper's action was settled for the sum of $40,000. If petitioner's fee was 40 percent, Cooper's share would have been $24,000; if the fee was $33\frac{1}{3}$ percent, Cooper's share would have been $26,666.67. On April 6, at petitioner's direction, Cooper signed a release and endorsed the settlement draft; he was told by petitioner that he would receive his share after the draft cleared collection in about 10 days. That same day, the draft was deposited to petitioner's client trust account and brought the balance of that account to $40,477.27. On that date or soon thereafter, Cooper told Dr. Fox of the settlement. Apparently some months later he told Rosenbaum, his former attorney, as well. Petitioner did not inform either man of the settlement.

On April 7 or 8, 1983, petitioner started a well-publicized and demanding trial in a defamation action entitled Galloway v. CBS, Inc. (hereafter *Gallo-*

*way*). He represented the plaintiff as sole counsel; a large firm represented the defendants.

Apparently in mid-April 1983, having heard nothing about the settlement, Cooper and his wife began making daily telephone calls to petitioner; they failed in their attempts to speak to him; they left messages; petitioner did not return the calls. On one occasion, Cooper went to the *Galloway* trial in an effort to discuss the matter, but was unsuccessful. On May 19 Cooper sent petitioner a letter requesting his share of the settlement; he posted the letter by certified mail and subsequently received a notice that it had in fact been delivered; petitioner did not respond. On June 6 the *Galloway* trial ended with a verdict in favor of the defendants.

On June 13, 1983, Cooper, his wife, and their son arrived at petitioner's office in the late morning; they brought food and extra clothing, intending to stay as long as necessary in order to see petitioner. About 5:30 p.m. petitioner met with the Coopers. Cooper demanded his share of the settlement. Petitioner said he could not pay the whole sum. (On that date, his client trust account contained only $14,325.19.) He offered to pay $10,000 on account with a balance of $17,085 payable on or before September 15, 1983. Cooper accepted the offer because he believed he had no other choice. Petitioner testified that Cooper offered to lend him a portion of his share of the settlement. Petitioner's testimony was false: Cooper made no such offer. Petitioner prepared a "note" as a memorial of the agreement. The document described the $10,000 paid to Cooper as an "advance" on the settlement and stated that the "balance" of $17,085 was due on or before September 15 of that year. (The next day, Cooper filed a complaint with the State Bar, which soon informed petitioner of the matter.)

On July 13, 1983, Dr. Fox sent petitioner a letter reminding him of the lien for medical services provided to Cooper and demanding payment. Petitioner testified that he paid Dr. Fox shortly thereafter. In fact, it was only after Dr. Fox made further demands that petitioner made payment, on January 19, 1984.

On September 15, 1983, petitioner testified, he drew a check on his client trust account in the amount of $17,085 payable to Cooper and mailed the check to him. On that date, the balance in the account was $9,341.45. Cooper never received the check. Petitioner's testimony was false: he did not draw or mail the check as he had stated.

On September 22, 1983, petitioner paid Cooper the sum of $17,085 by check drawn on his client trust account. He did not render Cooper a written

accounting of the funds he had received in trust, and effectively refused to do so.

Between April and September of 1983, the balance in petitioner's client trust account was less than the amount held in trust for Cooper. Indeed, at one point the balance declined to $71.29. Petitioner used Cooper's funds for his personal benefit and for the benefit of other clients. Petitioner testified that he believed the funds he used were covered by an advance for costs in the *Galloway* action. Petitioner had no reasonable basis for such a belief: he had no method by which he could reconcile his client trust account or even verify its balance.

In January 1984 Rosenbaum, Cooper's former attorney, began an attempt to obtain payment from petitioner for a reasonable fee and reimbursement for costs. In 1984, Rosenbaum made several telephone calls to petitioner and sent him several letters, but obtained no satisfaction. In a letter to a State Bar investigator dated August 7, 1985, petitioner acknowledged his obligation to reimburse Rosenbaum for costs (but did not mention his obligation to pay a reasonable fee), and represented that on that very date he was sending Rosenbaum his own personal check to cover the costs. Petitioner's representation was false: he did not send Rosenbaum any money on that date, or on any date thereafter.

In conducting himself as he did in the Cooper matter, petitioner wilfully violated his oath and duties as an attorney in the following particulars: (1) he failed to cooperate and participate in disciplinary investigations and proceedings (Bus. & Prof. Code, § 6068, subd. (i)); (2) he failed to keep his client reasonably informed of significant developments and to promptly respond to reasonable status inquiries (*id.*, § 6068, subd. (m)); (3) he violated the "duties" of Business and Professions Code section 6103; (4) he engaged in acts involving moral turpitude, dishonesty, or corruption (*id.*, § 6106); (5) he failed to maintain complete records of, or to render appropriate accounts regarding, funds belonging to his client (Rules Prof. Conduct, rule 8-101(B)(3)); and (6) he failed to promptly pay to his client funds to which the client was entitled (*id.*, rule 8-101(B)(4)).

As to Count II, in February 1980 petitioner was retained by Elizabeth-Avila Patterson to represent her in a workers' compensation matter. For about 10 months, communication between petitioner and Patterson was satisfactory. A breakdown then occurred. Patterson made telephone calls to petitioner's office and left messages, but petitioner failed to call her back. After about six months, Patterson gave up her efforts. She requested another attorney to take over her case, and executed a substitution-of-attorney form for that purpose.

In August 1981, shortly after executing the form, Patterson was called by petitioner; she was asked to go to his office for a conference, and she agreed. At the conference, he advised her of the status of her case, apologized for not communicating more often, and stated that the courts were congested and as a result her case would not be heard for a considerable time. He promised he would keep her apprised of developments. Having received his promise, she decided to rescind the substitution of attorney.

From August to December of 1981, Patterson made no attempt to communicate with petitioner. From about January 1982 through July 1983, however, she made numerous attempts, all without success: she would call petitioner's office and be told that petitioner was not available, but would return her call; he would not do so. During this period, Patterson received no written communication from petitioner.

In August 1983 Patterson consulted with Attorney Marlene Carmel Tassone; she requested that Tassone take over her case, and Tassone agreed to do so. On August 5 Tassone wrote a letter to petitioner advising him of Patterson's decision and requesting that he execute an enclosed substitution-of-attorney form and return it together with his client file. Tassone received no response. She wrote again on August 26, September 8, and September 30, with the same result.

In December 1983 Tassone wrote yet another letter to petitioner about the Patterson matter, with a courtesy copy to the State Bar. (Apparently around this time Patterson filed a complaint with the State Bar.) The State Bar made inquiry of petitioner; he represented that the delay was caused by his involvement in the *Galloway* trial. Petitioner called Tassone, apologized for the delay, and made the same representation about its cause. But as noted above, the *Galloway* trial had concluded on June 6, 1983—two months *before* Tassone's first letter. Petitioner subsequently admitted to the State Bar that the real reason for the delay was his desire to determine whether Patterson was firm in her decision to change attorneys. At the same time he misrepresented to the State Bar that Tassone knew of this fact.

On April 19, May 9, and June 13, 1984, the State Bar wrote to petitioner requesting that he take action in the Patterson matter. Finally, on August 6, petitioner transmitted to Tassone an executed substitution-of-attorney form and his client file.

In conducting himself as he did in the Patterson matter, petitioner wilfully violated his oath and duties as an attorney in the following particulars: (1) he failed to cooperate and participate in disciplinary investigations and proceedings (Bus. & Prof. Code, § 6068, subd. (i)); (2) he failed to keep his

client reasonably informed of significant developments and to promptly respond to reasonable status inquiries (*id.*, § 6068, subd. (m)); (3) he violated the "duties" of Business and Professions Code section 6103; (4) he engaged in acts involving moral turpitude, dishonesty, or corruption (*id.*, § 6106); and (5) he withdrew from employment without taking reasonable steps to avoid prejudice to his client (Rules Prof. Conduct, rule 2-111(A)(2)).

Circumstances in mitigation were disclosed by the record. First, as noted above petitioner had no prior record of discipline. Second, in 1983 he began to experience marital problems, which subjected him to stress and as a result adversely affected his professional ability. Third, he did not cause either Cooper or Patterson to suffer financial loss.

But also disclosed by the record were circumstances in aggravation. First, petitioner neglected his clients: he avoided Cooper for two months after the settlement, and refused to comply with Patterson's request for substitution for about a year. Second, he engaged in misconduct surrounded by bad faith, dishonesty, and/or concealment. Third, in the Cooper matter he mishandled a client's funds and refused to render an accounting. Fourth, he was repeatedly untruthful in the course of the State Bar investigation, perjured himself at the hearing, and attempted to manufacture evidence.

In view of its findings of fact and conclusions of law, the review department unanimously recommended that petitioner be disbarred. It did not explain why its recommendation was more severe than that of the hearing panel.

Subsequently, petitioner filed in this court a petition for writ of review of the State Bar's recommendation, and we ordered the writ to issue.

## II. Discussion

"In disciplinary matters we independently examine the record in its entirety, weigh the evidence, and determine the appropriate discipline to be imposed. [Citations.] Accordingly, we are bound neither by the findings of fact of the State Bar [citation], nor by its conclusions of law [citation], nor by its recommendation as to discipline [citation]. Nevertheless, 'the burden is upon the petitioner to show wherein the decision or action [of the State Bar] is erroneous or unlawful.' [Citation.] 'Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys.' " (*Sands* v. *State Bar* (1989) 49 Cal.3d 919, 928 [264 Cal.Rptr. 354, 782 P.2d 595].)

Petitioner contends the recommendation of disbarment is erroneous. In support, he claims the recommendation is unsupported because the underlying findings of fact and conclusions of law are unsound.

■ Petitioner first attacks the findings and conclusions relating to the Cooper matter. He argues generally as follows: the findings and conclusions in question were based on the testimony of the Coopers, that testimony was not worthy of credit, and therefore those determinations are infirm. We are not persuaded. After independent review, we believe the Coopers were indeed credible witnesses. Certainly, the hearing panel—which actually heard their testimony and saw their demeanor—was of that view. We find no reason to disagree. Petitioner then argues he did not misappropriate any funds but merely "borrowed" money in what amounted to a simple "loan." But he could not "borrow" funds he had already used. He next argues the misappropriation was "inadvertent." But the evidence compels the inference that he needed money for the *Galloway* trial and other matters and simply took it. ■ He finally argues the misappropriation did not result in harm. Whether it did so, however, is not determinative: it remains a violation. (See *Athearn* v. *State Bar* (1977) 20 Cal.3d 232, 236 [142 Cal.Rptr. 171, 571 P.2d 628].)

■ Petitioner also attacks the findings and conclusions relating to the Patterson matter. He argues his communication with Patterson was adequate. The record, however, refutes the claim: for 18 months he did not communicate with her at all. He then argues his failings did not amount to a disciplinary violation. Again the record refutes the claim: for example, it is pellucid that he violated section 6068, subdivision (m), of the Business and Professions Code by failing to promptly respond to Patterson's reasonable status inquiries. He also argues his delivery of his client file and the executed substitution-of-attorney form to Tassone was not unreasonably delayed. But on these facts, the delay—which was about a year—cannot be characterized otherwise. He finally argues his failings were excused because Patterson, he claims, had a copy of each of the documents in the file. The excuse is plainly inapplicable as to the substitution-of-attorney form. And it is ineffective as to the file. Even if Patterson had a copy, petitioner was nevertheless obligated to turn the file over to Tassone.

Petitioner next claims the recommendation of disbarment is excessive. ■ Of course, "The purpose of discipline is to protect the public, the courts, and the legal profession." (*Sands* v. *State Bar, supra,* 49 Cal.3d at p. 931.) ■ Petitioner's misconduct was unquestionably serious. Petitioner argues to the contrary. But the fact is that "misappropriation [alone] generally warrants disbarment . . . ." (*Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 656 [247 Cal.Rptr. 608, 754 P.2d 1104]; accord, *Bradpiece* v. *State Bar*

(1974) 10 Cal.3d 742, 746-747 [111 Cal.Rptr. 905, 518 P.2d 337].) Petitioner's misconduct in the past discloses a significant threat of misconduct in the future. To deter such behavior, severe discipline is required. Actual suspension for one year (as recommended by the hearing panel) would be inadequate to the threat.

Although petitioner's misconduct was serious, it appears to have been aberrational. It was attributable at least in part to stresses petitioner experienced arising from marital problems. More important, it occurred after he had practiced law for more than 20 years with an unblemished record. That fact is highly significant for purposes here. "The absence of a prior disciplinary record is in itself an important mitigating circumstance." (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132, fn. 10 [202 Cal.Rptr. 349, 680 P.2d 82]; accord, *Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239].) "It is [a] particularly . . . strong mitigating factor in this case, given petitioner's substantial years of practice." (*Waysman* v. *State Bar, supra,* at p. 457.) Because the past misconduct was apparently aberrational, the threat of future misconduct should be somewhat discounted. Accordingly, in view of the prophylactic purpose of attorney discipline, disbarment (as recommended by the review department) would be excessive in this case.

After independent review, we are of the opinion that the findings of fact and conclusions of law of the review department are sound and adopt them as our own, except in the following particular: petitioner's misconduct did not amount to wilful violation of the "duties" of Business and Professions Code section 6103; that provision defines no duties (*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 815 [263 Cal.Rptr. 798, 781 P.2d 1344]).

We are also of the opinion that the recommendation of disbarment made by the review department is without adequate support and must accordingly be rejected. As we have explained, in view of the purpose of attorney discipline, disbarment would be excessive and may not properly be imposed. To protect the public, the courts, and the profession, it is sufficient to suspend petitioner from the practice of law for five years, stay his suspension, and place him on probation for five years on conditions including actual suspension for three years. (Compare *Weller* v. *State Bar* (1989) 49 Cal.3d 670 [262 Cal.Rptr. 549, 779 P.2d 293] [imposing similar discipline: attorney misappropriated clients' funds but presented significant mitigating evidence].)

### III. DISPOSITION

Accordingly, it is ordered that petitioner Bruce A. Friedman be suspended from the practice of law for a period of five years from the date on which

this decision becomes final; and that execution of the order of suspension be stayed and petitioner be placed on probation, with a probation monitor referee to be assigned pursuant to rules 610 and 611 of the Rules of Procedure of the State Bar, for a period of five years, subject to the following conditions: (1) for the first three years of said probationary period, he shall be actually suspended from the practice of law in the State of California; (2) he shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California; (3) he shall file with the State Bar such reports concerning his compliance with the conditions of probation as directed by the probation monitor referee; (4) he shall comply with the provisions of paragraph (a) of rule 955 of the California Rules of Court within 30 days of the date on which this decision becomes final, and file with the Clerk of the Supreme Court within 15 days thereafter an affidavit as provided for in paragraph (c) of said rule showing compliance; and (5) he shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners during the period of his actual suspension from the practice of law.

By this order petitioner is referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. He shall promptly review the terms and conditions of his probation with the probation monitor referee to establish a manner and schedule of compliance consistent with the terms of probation. He shall cooperate fully with the probation monitor referee to enable the referee to discharge his duties pursuant to rule 611 of the Rules of Procedure of the State Bar.

At the expiration of the period of probation, if he has complied with the terms of probation, the order suspending petitioner from the practice of law for a period of five years shall be satisfied and the suspension terminated.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

Petitioner's application for a rehearing was denied March 28, 1990.