[No. S008882. Dec. 20, 1990.]

JOHN H. EDWARDS III, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Kenneth K. Kocourek for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Margaret E. Fourt and Janet S. Hunt for Respondent.

**OPINION**

**THE COURT.**—The Review Department of the State Bar Court (review department) has recommended that petitioner John H. Edwards III be suspended from the practice of law in California for three years, that execution of the suspension order be stayed, and that he be placed on probation for three years upon conditions that include actual suspension from the practice of law for two years. The recommendation is based on uncontested evidence that petitioner commingled personal and client funds in a trust account and that on at least one occasion petitioner misappropriated a client's settlement funds from the account. Petitioner contends that the recommended discipline is excessive and that the review department seeks to impose discipline for misconduct that was never charged.

Finding no significant errors in the procedures or in the findings and conclusions of the State Bar Court, we will adopt those findings and conclusions. We have determined, however, that the recommended discipline is excessive insofar as it requires an actual suspension for two years, and that the purposes of attorney discipline will be fully served by actually suspending petitioner for one year.

FACTS

Petitioner was admitted to the practice of law in California in June 1972 and has been continuously licensed to practice since that time except for a 10-day suspension in 1985[1] for nonpayment of dues. Apart from this suspension, petitioner has not previously been disciplined by the State Bar.

---

[1] The State Bar's findings state that the suspension occurred in 1975, but this is an error. The uncontradicted evidence, consisting of petitioner's testimony and the State Bar's membership records, shows that it occurred in 1985.

Petitioner represented Paris Henighan-Shoup as the plaintiff in a personal injury matter that was settled for $5,000. Petitioner received the settlement proceeds and deposited them in his client trust account. On or about March 6, 1984, petitioner sent Henighan-Shoup a check for $3,000, the amount due her after deduction of petitioner's fee as provided by their contingency fee agreement. Henighan-Shoup tried to negotiate the check, but there were insufficient funds in the trust account and the check was not honored. Between February 22 and March 23 of 1984, the balance in petitioner's trust account fluctuated from a low of $31.22, on March 23, to a high of $634.37, on March 20.

Henighan-Shoup, who was then living in Billings, Montana, telephoned petitioner after learning that the check would not clear. Petitioner acknowledged that he had been having financial difficulties and promised that he would send her the settlement funds with an additional amount to compensate for the inconvenience. In the ensuing weeks, Henighan-Shoup made many additional telephone calls to petitioner's office to inquire about the funds. She spoke to petitioner personally on one or two of these occasions; he was polite and apologetic and promised to send the funds. On May 7, 1984, Henighan-Shoup signed an informal complaint to the State Bar regarding petitioner's conduct, but she did not tell petitioner she had done so. On or about May 28, 1984, petitioner sent Henighan-Shoup a cashier's check for $3,200. The delay in receiving the funds caused a corresponding delay in Henighan-Shoup's efforts to start her own business.

Based on these facts, the State Bar issued a notice to show cause charging petitioner with willfully misappropriating Henighan-Shoup's funds to his own use and purpose in violation of Business and Professions Code sections 6068, 6103, and 6106,[2] and subdivisions (B)(1), (B)(3), and (B)(4) of former rule 8-101 (see now, rule 4-100) of the Rules of Professional Conduct.[3]

---

[2] All further statutory references are to the Business and Professions Code unless otherwise indicated.

Section 6068 describes the duties of an attorney. Section 6103 provides, in relevant part, that any violation of an attorney's duties constitutes cause for disbarment or suspension. Section 6106 provides, in relevant part, that the commission of any act involving moral turpitude, dishonesty, or corruption constitutes cause for disbarment or suspension.

[3] All references to rules are to the State Bar Rules of Professional Conduct unless otherwise indicated. The present rules took effect on May 27, 1989, after the misconduct involved here. References to former rules are to those in effect when petitioner's conduct occurred.

Former rule 8-101, as here relevant, required an attorney to promptly notify a client of the receipt of client funds, maintain complete records of client funds in the attorney's possession and render appropriate accounts to the client, and promptly pay the client on request all funds the client is entitled to receive.

The charges were heard before a two-referee hearing panel.[4] At the hearing, petitioner testified that his residence had been threatened by foreclosure proceedings in March 1984, and that around that time he had written a check on the trust account to prevent the foreclosure. He knew when he wrote the check that the funds in the account were not his. He subsequently reimbursed the account by depositing $3,000 of his own funds, but he did not remember when this occurred. He could not say whether it was Henighan-Shoup's settlement proceeds that were withdrawn from the client trust account to prevent the foreclosure. Her funds might have been withdrawn to pay another client who asked for a refund of unearned fees when he no longer wished to be represented by petitioner. This other client's fee payment had not been deposited into the trust account, but petitioner nonetheless used the trust account to refund the unearned fees.

Asked whether he knew the balance in the trust account when he wrote the check to Henighan-Shoup, petitioner replied that he had believed there were sufficient funds in the account to cover the check, but that he had not known the exact balance. He said he "would kind of keep a mental idea" as to the balance, rather than maintaining a record of the exact balance. Petitioner said he did not maintain a chart of the client funds in his trust account and did not promptly withdraw funds to which he became entitled as fees or as reimbursement for costs. He would allow his own funds to accumulate in the account and would draw on them as needed, sometimes by means of automated teller machines.

In mitigation, petitioner testified that he has been married since December 1972, that he has a 10-year-old son, that he is a sole practitioner doing primarily family law and employment discrimination, that he practices in an economically depressed area and is frequently unable to collect fees, that he now employs a certified public accountant to manage his trust account (although he makes all deposits and withdrawals himself), and that he no longer deposits his own funds into his trust account or writes checks on the trust account for his personal use. He also testified that the funds he eventually used to pay Henighan-Shoup came from a bank loan and that the delay in paying Henighan-Shoup resulted from the bank's delay in approving this loan.

The hearing panel found the facts relevant to misconduct to be as stated above. In regard to circumstances in mitigation and aggravation, the hearing panel made these findings: Petitioner's acts did not significantly harm Henighan-Shoup, although they caused her financial inconvenience;

---

[4]The hearing panel initially consisted of three referees, but one referee recused herself because she was a close personal friend of the attorney representing petitioner.

petitioner was candid and direct with the State Bar, supplying requested materials and explanations; petitioner made full repayment to Henighan-Shoup before he was aware he was under investigation by the State Bar; petitioner's dealings in his trust account, by his own admission, involve multiple acts of inappropriate record keeping and use of funds for personal matters; and petitioner in his testimony demonstrated a lack of appreciation of the seriousness of his misconduct and a surprising lack of understanding of the significance and use of trust property.

The hearing panel concluded that clear and convincing evidence supported the charges that petitioner had failed to maintain proper trust account records (former rule 8-101(B)(3)) and had failed to promptly pay funds his client was entitled to receive (former rule 8-101(B)(4)), but it also concluded that the charge that petitioner had failed to promptly notify his client of the receipt of her funds (former rule 8-101(B)(1)) was not so supported. The hearing panel concluded that by violating the Rules of Professional Conduct petitioner had also violated his oath and duties as an attorney (§§ 6068, 6103; see *Garlow* v. *State Bar* (1988) 44 Cal.3d 689, 706 [244 Cal.Rptr. 452, 749 P.2d 1307]), but that petitioner's acts did not involve moral turpitude, dishonesty, or corruption (§ 6106). The hearing panel recommended, initially, that petitioner be suspended from the practice of law for one year, that execution of suspension be stayed, and that petitioner be placed on probation on various terms and conditions not including any actual suspension from the practice of law.

The State Bar petitioned for reconsideration on the grounds, among others, that a period of at least three months' actual suspension was required by standard 2.2(b) of the State Bar's Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct);[5] and that petitioner should be required to take and pass the Professional Responsibility Examination under this court's decision in *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891 [126 Cal.Rptr. 793, 544 P.2d 929]. After reconsideration, the hearing panel modified its decision by adding certain probation conditions relating to the management of petitioner's trust accounts, and by requiring that petitioner take and pass the Professional Responsibility Examination, but the hearing panel again declined to impose a period of actual suspension.

The review department adopted the hearing panel's findings of fact and conclusions of law, with these significant exceptions: a finding was added

---

[5] All further references to standards are to these provisions. Standard 2.2(b) provides that at least a three-month actual suspension shall be imposed for commingling entrusted funds with personal property or the commission of any other violation of former rule 8-101 except the willful misappropriation of entrusted funds.

that petitioner had admitted engaging in periodic commingling and periodic misappropriation of trust funds, including kiting client funds; a conclusion that petitioner's acts involved moral turpitude, dishonesty, and corruption was substituted in place of the hearing panel's conclusion to the contrary; and a conclusion that petitioner had engaged in multiple acts of misappropriation was substituted in place of a conclusion that petitioner was not willfully dishonest. The review department recommended that this court discipline petitioner by placing him on suspension for three years, stayed, with a three-year period of probation on various conditions including actual suspension for the first two years of the probationary period; by ordering him to comply with rule 955 of the California Rules of Court; and by requiring that he take and pass the Professional Responsibility Examination.

## DISCUSSION

In attorney discipline matters, we independently examine the entire record, weigh the evidence, and determine the appropriate discipline; in so doing, we are not bound by the review department's findings of fact, conclusions of law, or recommendation as to discipline; petitioner nevertheless bears the burden of showing error in the review department's findings, conclusions, and recommendation. (*Sands* v. *State Bar* (1989) 49 Cal.3d 919, 928 [264 Cal.Rptr. 354, 782 P.2d 595].)

Petitioner contends that the review department's conclusion that he engaged in "multiple acts of misappropriation" was improper because the notice to show cause charged only a single act of misappropriation. Petitioner argues that, by making findings beyond the scope of the charging document, the review department denied him his fundamental right to notice of the charges against him and an opportunity to defend against them.

An attorney may not be disciplined for a violation not alleged in the notice to show cause. (*Van Sloten* v. *State Bar* (1989) 48 Cal.3d 921, 928 [258 Cal.Rptr. 235, 771 P.2d 1323]; *Gendron* v. *State Bar* (1983) 35 Cal.3d 409, 420 [197 Cal.Rptr. 590, 673 P.2d 260].) When the evidence at the hearing discloses misconduct not charged in the original notice, the State Bar may move to amend the notice to conform to the proof; but, if the State Bar fails to do so, the attorney may be disciplined only for the misconduct alleged in the original notice. (*Ibid.*; see also, *Rose* v. *State Bar* (1989) 49 Cal.3d 646, 654 [262 Cal.Rptr. 702, 779 P.2d 761].)

Although evidence of uncharged misconduct may not be used as an independent ground of discipline, it may be considered for other purposes

relevant to the proceeding. (See, e.g., *Arm* v. *State Bar* (1990) 50 Cal.3d 763, 775 [268 Cal.Rptr. 741, 789 P.2d 922].) Here, evidence of uncharged misconduct was relevant to establish a circumstance in aggravation.

Standard 1.2(b)(ii) provides that it shall be considered an aggravating circumstance "that the current misconduct found or acknowledged by the member evidences multiple acts of wrongdoing or demonstrates a pattern of misconduct." Petitioner was charged with misappropriating a client's funds based on evidence that petitioner's trust account balance fell below the amount of that client's deposited settlement funds. Petitioner was examined under oath to determine how this had occurred, and in his testimony acknowledged a practice of commingling his own funds in his client trust account and failing to keep proper records. He further admitted using trust account funds to prevent foreclosure on his residence when he knew the funds were not his, and using trust account funds to refund unearned fees to a former client whose fee payments had never been deposited into the trust account. Because this evidence was elicited for the relevant purpose of inquiring into the cause of the charged misconduct, because the evidence was used merely to establish a circumstance in aggravation, and not as an independent ground of discipline, and because the review department's conclusion was based on petitioner's own testimony, we find no violation of petitioner's right to notice of the charges against him.

The remaining question is whether the recommended discipline is appropriate. ■■ In determining attorney discipline, we give great weight to the recommendation of the review department and to the standards, although neither is binding on us. A review department's recommendation that is supported by the standards generally will not be rejected unless we have grave doubts about the propriety of the recommended discipline. (*In re Naney* (1990) 51 Cal.3d 186, 190 [270 Cal.Rptr. 848, 793 P.2d 54]; *Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908].)

■■ The essence of the charge against petitioner was willful misappropriation of client funds. Although neither the hearing panel nor the review department made an express finding on the issue,[6] we find that the State Bar has proven by clear and convincing evidence that petitioner willfully misappropriated funds from his client as charged in the notice to show cause.

There is no question that petitioner misappropriated his client's funds. Petitioner received funds belonging to Ms. Henighan-Shoup, his client, and

---

[6] We recommend that in future discipline cases in which the attorney is charged with improper handling of client funds and evidence of misappropriation is received, the State Bar Court, in addition to its findings and conclusions under rule 4-100, make express findings and conclusions on the issue of willful misappropriation.

he deposited the funds in his client trust account. Petitioner then withdrew funds from the account and spent them for his own benefit without his client's authorization. When the time came to pay the client, the account contained insufficient funds. These facts, which were found by the hearing panel and the review department, and which were freely admitted by petitioner, establish misappropriation.

The record also establishes by clear and convincing evidence that the misappropriation was willful. ■■ An attorney's misconduct need not be in bad faith to be willful; rather, all that is required is "a general purpose or willingness to commit the act or permit the omission." (*Durbin* v. *State Bar* (1979) 23 Cal.3d 461, 467 [152 Cal.Rptr. 749, 590 P.2d 876].) Evidence that the balance in a trust account fell below the amount credited to a client is sufficient to support a finding of willful misappropriation. (*Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 795 [205 Cal.Rptr. 834, 685 P.2d 1185]; *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 123 [202 Cal.Rptr. 349, 680 P.2d 82].) If the misappropriation was caused by serious and inexcusable violations of an attorney's duties to oversee client funds entrusted to the attorney's care and to keep detailed records and accounts thereof, the violation is deemed willful even in the absence of deliberate wrongdoing. (*Palomo* v. *State Bar*, *supra*, at pp. 795-796; see also, *Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 342 [211 Cal.Rptr. 525, 695 P.2d 1066].)

■■ ■■ In discussing the appropriate discipline for an attorney who has willfully misappropriated client funds, this court has stated that the "usual" discipline for this misconduct is disbarment (*Howard* v. *State Bar* (1990) 51 Cal.3d 215, 221 [270 Cal.Rptr. 856, 793 P.2d 62]; *Gordon* v. *State Bar* (1982) 31 Cal.3d 748, 757 [183 Cal.Rptr. 861, 647 P.2d 137]), that it "generally" warrants disbarment (*Friedman* v. *State Bar* (1990) 50 Cal.3d 235, 244 [266 Cal.Rptr. 632, 786 P.2d 359]; *Kelly* v. *State Bar* (1988) 45 Cal.3d 649, 656 [247 Cal.Rptr. 608, 754 P.2d 1104]), that it "frequently" justifies disbarment (*Weller* v. *State Bar* (1989) 49 Cal.3d 670, 677 [262 Cal.Rptr. 549, 779 P.2d 293]), and that it "could warrant disbarment in the absence of extenuating circumstances" (*Murray* v. *State Bar* (1985) 40 Cal.3d 575, 583 [220 Cal.Rptr. 677, 709 P.2d 480]; see also, *Stevens* v. *State Bar* (1990) 51 Cal.3d 283, 289-290 [272 Cal.Rptr. 167, 794 P.2d 925]; *Weber* v. *State Bar* (1988) 47 Cal.3d 492, 508 [253 Cal.Rptr. 573, 764 P.2d 701]).

Examination of cases in which this court has not disbarred an attorney found to have willfully misappropriated client funds reveals a variety of "extenuating circumstances" that we have deemed sufficient to warrant a lesser punishment. In some cases, the attorney has presented evidence of compelling mitigating circumstances relating to the attorney's background or character or to unusual difficulties the attorney was experiencing at the

time of the misconduct, which tended to prove that the misconduct was aberrational and hence unlikely to recur. (E.g., *Howard* v. *State Bar, supra,* 51 Cal.3d 215, 222 [rehabilitation from alcoholism and drug dependency]; *Weller* v. *State Bar, supra,* 49 Cal.3d 670, 675 [emotional strain; character testimonials]; *Friedman* v. *State Bar, supra,* 50 Cal.3d 235, 245 [stress of marital problems; long, unblemished record of legal practice]; *Chefsky* v. *State Bar, supra,* 36 Cal.3d 116, 132 [long, unblemished record; illness; relocation of practice].)

We have also recognized extenuating circumstances relating to the facts of the misappropriation. As the term is used in attorney discipline cases, "willful misappropriation" covers a broad range of conduct varying significantly in the degree of culpability. An attorney who deliberately takes a client's funds, intending to keep them permanently, and answers the client's inquiries with lies and evasions, is deserving of more severe discipline than an attorney who has acted negligently, without intent to deprive and without acts of deception. Although lack of evil intent does not immunize an attorney's conduct from discipline (see *Murray* v. *State Bar, supra,* 40 Cal.3d 575, 582), the attorney's good faith is an important consideration in determining the degree of discipline to be imposed. Disbarment would rarely, if ever, be an appropriate discipline for an attorney whose only misconduct was a single act of negligent misappropriation, unaccompanied by acts of deceit or other aggravating factors. Thus, we have ordered discipline as light as 30 days of actual suspension when the misappropriation resulted from negligence and other mitigating factors were present. (*Schultz* v. *State Bar* (1975) 15 Cal.3d 799, 803-805 [126 Cal.Rptr. 232, 543 P.2d 600].)

Standard 2.2(a) provides that disbarment is the normal discipline for an attorney who has willfully misappropriated entrusted funds, and that a lesser discipline shall be imposed only if the amount of the funds misappropriated is insignificantly small or if the "most compelling mitigating circumstances clearly predominate," in which case the attorney shall be actually suspended for at least one year. This standard correctly recognizes that willful misappropriation is grave misconduct for which disbarment is the usual form of discipline. In requiring that a minimum of one year of actual suspension invariably be imposed, however, the standard is not faithful to the teachings of this court's decisions. (See, e.g., *Howard* v. *State Bar, supra,* 51 Cal.3d 215 [six months' actual suspension].) The standard's one-year minimum should be regarded as a guideline, not an inflexible mandate.

We agree with the review department that disbarment is unnecessary in this case to further the purposes of attorney discipline, which are "the protection of the public, the courts and the legal profession; the

maintenance of high professional standards by attorneys and the preservation of public confidence in the legal profession." (Std. 1.3.) Petitioner has not been disciplined before and, therefore, as we have noted in previous cases, "we have no evidence that a sanction short of disbarment is inadequate to deter future misconduct and protect the public." (*Maltaman* v. *State Bar* (1987) 43 Cal.3d 924, 958 [239 Cal.Rptr. 687, 741 P.2d 185].) In addition, petitioner engaged in no acts of deceit, made full repayment within three months after the misappropriation and before he was aware of the complaint to the State Bar, has been candid and cooperative throughout the proceedings, and voluntarily took steps to improve his management of entrusted funds.

Having independently reviewed and considered the whole record, we conclude that the recommended discipline is excessive insofar as it requires two years of actual suspension, and that a period of one year of actual suspension will be sufficient to protect the public, the courts, and the profession.

### DISPOSITION

We order that John H. Edwards III be suspended from the practice of law for three years from the date this opinion is final but that execution of the suspension order be stayed and that he be placed on probation for three years on all the conditions of probation adopted by the review department at its December 8, 1988, meeting, except that petitioner shall be actually suspended from the practice of law for only the first one year of the probationary period.

It is further ordered that John H. Edwards III comply with the requirements of rule 955 of the California Rules of Court, that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order (under section 6126, subdivision (c), failure to comply with rule 955 of the California Rules of Court may result in imprisonment), and that he take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year of the effective date of this order.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)