[No. S008755. Dec. 4, 1989.]

BARRY GERALD SANDS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Ball, Hunt, Hart, Brown & Baerwitz, John D. Schunk and Robert E. Aitken for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Lawrence C. Yee for Respondent.

OPINION

**THE COURT.**—In this proceeding under section 6083, subdivision (a), of the Business and Professions Code and rule 952(a) of the California Rules of Court, we review the decision of the State Bar recommending that petitioner Barry Gerald Sands be disbarred from the practice of law in California as discipline for professional misconduct. A hearing panel of the State Bar Court (hereafter the hearing panel or simply panel) recommended disbarment. The Review Department of the State Bar Court (hereafter the review department or simply department) unanimously recommended disbarment as well. As we shall explain, we conclude that petitioner should indeed be disbarred.[1]

## I. FACTS

Petitioner was admitted to the practice of law in this state as a member of the State Bar on January 15, 1970. He has no prior record of discipline.

On July 14, 1987, the Office of Trial Counsel of the State Bar filed a notice to show cause in the Hearing Department of the State Bar Court. The notice charged petitioner with four counts of professional misconduct relating to matters involving Jean Washington (Count I), Ralph Beery (Count II), Julie Erhardt (Count III), and Michael Tarrish (Count IV).

On January 21, 1988, the examiner for the State Bar Office of Trial Counsel and petitioner entered into a "Stipulation as to Facts and Culpability Pursuant to Rule 401 of the Rules of Procedure of the State Bar" (hereafter the stipulation). The stipulation covered the matters involving Washington, Beery, and Erhardt.

On January 26 and 27, 1988, a hearing was conducted before a hearing panel consisting of a retired superior court judge. The stipulation as to the

---

[1] New Rules of Professional Conduct became effective May 27, 1989. All "rule" citations refer to the former Rules of Professional Conduct, effective January 1, 1975, and in effect at times relevant herein, unless otherwise indicated.

Washington, Beery, and Erhardt matters was introduced by the examiner and received into evidence and approved by the panel. The examiner called Tarrish to testify about the matter in which he was involved. Petitioner declined to testify in order to avoid waiving any privilege he may have had under the Fifth Amendment, and did not call any witnesses to testify on his behalf. The hearing was then recessed.

On or about February 15, 1988, the hearing panel found culpability on petitioner's part in the Tarrish matter.

On February 19, 1988, the hearing was opened for the taking of evidence in aggravation and mitigation. Petitioner took the stand on his own behalf as his only witness; he gave testimony as to the Washington, Beery, and Erhardt matters, but declined to do so as to the Tarrish matter to avoid waiving any Fifth Amendment privilege. The examiner called no witnesses. Petitioner introduced character-reference letters from 30 judges and attorneys. The examiner introduced, among other documents, letters from nine of those persons qualifying their letters after they were informed of the stipulation on the Washington, Beery, and Erhardt matters and the allegations on the Tarrish matter. The panel received all the letters into evidence.

On April 21, 1988, the hearing panel filed its original decision. On May 23, 1988, it filed an amended decision, which was substantially similar to the original.

In the amended decision the hearing panel made findings of fact relating to the charges in the four-count notice to show cause. The findings as to the Washington, Beery, and Erhardt matters were adopted from the parties' stipulation; those as to the Tarrish matter were derived from the evidence presented at the hearing, i.e., the testimony given by Tarrish himself. Read in light of the record, the findings are in substance as follows.

With regard to Count I, in November 1976 petitioner was retained by Jean Washington to represent her in a personal injury matter on a contingent fee basis. In February 1977 he initiated an action on her behalf. From June 1977 until July 1982, he failed to use reasonable diligence to prosecute the action. During the same period, with one or two exceptions, he failed to communicate with her even though she had attempted to contact him.

In August 1982 the defendant in Washington's action moved the court to dismiss for lack of prosecution and for failure to bring the cause to trial

within five years. Petitioner did not file any response and did not appear at the hearing. In October 1982 the court dismissed the action for failure to bring the cause to trial within five years.

In November 1982 petitioner wrote Washington a letter in which he falsely represented that he had obtained a settlement in the amount of $1,445, and that he had deducted $400 for attorney's fees and costs and $625 for physician's bills, with $400 net to her. Later that month, after she had evidently rejected the "settlement," petitioner wrote her a letter in which he disclosed the dismissal of the action, stated the $400 net "settlement" remained in his office, and declared the case was closed. She requested him to turn over the client file in the matter, but he did not promptly comply. Finally, in June 1983 he gave her the file. Apparently at the same time he presented her with a release for her signature and a check in the amount of $1,045. He did not tell her that the release was for his benefit, to limit his liability for malpractice. He drew the check on his client trust account into which he had deposited his own funds.

As to Count II, in January 1979 petitioner was retained by Ralph Beery to represent him in a personal injury matter, evidently on a contingent fee basis. In September of that year he initiated an action on Beery's behalf. Beery left numerous telephone messages in an effort to learn the status of his case, but petitioner did not respond. In January 1980 petitioner wrote to Beery and discovery apparently ensued. In March 1982 an arbitration hearing was conducted with petitioner in attendance, and the matter was determined against Beery. Later that month, petitioner requested a trial de novo. In December 1982 a trial setting conference was held, but petitioner did not appear; as a result, the case was taken off calendar. Shortly thereafter, petitioner requested an attorney named Thomas Earl Hammack to handle the matter, without Beery's written consent. Petitioner did not monitor Hammack's work, and Beery was unable to reach Hammack by telephone or correspondence. Hammack did not perform any work on the case. In January 1984 petitioner referred Beery to an attorney named Anthony Manzella and substituted out of the case. In March 1984 Manzella settled the case on behalf of Beery for $3,500.

With regard to Count III, in March 1984 petitioner was retained by Julie Erhardt to represent her in a personal injury matter on a contingent fee basis. Erhardt told petitioner she would settle for $10,000 net to her; he understood her statement as authorization to settle for $10,000 gross. In August 1984 petitioner received a written settlement offer of $10,000, but failed to promptly communicate the offer to Erhardt. Later that month, he received a settlement draft in the amount of $10,000 and deposited the

funds into his client trust account. Still later that month, he deducted legal fees and costs in the amount of $4,323.40. In September of that year, he deducted sums, over and above those covered by the retainer agreement and without Erhardt's authorization. In that same month, he drew two checks on his client trust account, to satisfy medical liens in the matter; both checks were subsequently returned unpaid because of insufficient funds. Also in that month, he wrote to Erhardt, enclosing an accounting and a check in the amount of $2,603.66.

Finally, as to Count IV, in 1986 petitioner represented several clients in driver's license suspension proceedings before Michael Tarrish, a hearing officer for the Department of Motor Vehicles. On four occasions petitioner bought Tarrish lunch, discussed matters regarding his clients, and passed Tarrish a matchbook in which he had concealed a $100 bill. Whether the payments should be characterized as "gifts" or "loans" was held immaterial. But there was no written evidence that petitioner lent the money and there was no expectation on his part that any of it would be repaid—indeed, he had never even asked for repayment. Tarrish was charged with bribery among other felonies and pleaded guilty to that offense. He was subsequently placed on probation, on conditions including cooperation with the State Bar.

In the amended decision the hearing panel made conclusions of law relating to the charges. The conclusions as to the Washington, Beery, and Erhardt matters were adopted from the parties' stipulation; those as to the Tarrish matter were drawn by the panel itself from the evidence introduced at the hearing and the applicable law. Read in light of the record, the conclusions are in substance as follows.

In conducting himself as he did in the Washington matter, which is the subject of Count I, petitioner wilfully violated his oath and duties as an attorney in the following particulars: (1) he failed to support the law (Bus. & Prof. Code, § 6068, subd. (a)); (2) he violated the "duties" of Business and Professions Code section 6103; (3) he failed to refrain from acts involving moral turpitude, dishonesty, or corruption (*id.*, § 6106); (4) he failed to preserve the identity of funds of a client (Rules Prof. Conduct, former rule 8-101(A)); (5) he withdrew from employment without taking reasonable steps to avoid prejudice to his client (*id.*, former rule 2-111(A)(2)); (6) he attempted to limit his liability to a client for malpractice (*id.*, former rule 6-102); and (7) he failed to use reasonable diligence and his best judgment in his employment (*id.*, former rule 6-101(2)).

Next, in acting and failing to act as he did in the Beery matter, which is the subject of Count II, petitioner wilfully violated his oath and duties as an attorney in the following regards: (1) he failed to support the law (Bus. & Prof. Code, § 6068, subd. (a)); (2) he violated the "duties" of Business and Professions Code section 6103; (3) he withdrew from employment without taking reasonable steps to avoid prejudice to his client (Rules Prof. Conduct, former rule 2-111(A)(2)); (4) he failed to competently perform legal services either intentionally or with reckless disregard or repeatedly (*id.*, former rule 6-101(A)(2)); and (5) he failed to use reasonable diligence and his best judgment in his employment (*id.*, former rule 6-101(2)).

Further, in conducting himself as he did in the Erhardt matter, which is the subject of Count III, petitioner wilfully violated his oath and duties as an attorney in the following particulars: (1) he failed to support the law (Bus. & Prof. Code, § 6068, subd. (a)); (2) he violated the "duties" of Business and Professions Code section 6103; (3) he failed to refrain from acts involving moral turpitude, dishonesty, or corruption (*id.*, § 6106); (4) he failed to competently perform legal services either intentionally or with reckless disregard or repeatedly (Rules Prof. Conduct, former rule 6-101(A)(2)); (5) he failed to promptly communicate a written settlement offer to his client (*id.*, former rule 5-105); and (6) he failed to preserve the identity of funds of a client (*id.*, former rule 8-101(A)).

Finally, in acting and failing to act as he did in the Tarrish matter, which is the subject of Count IV, petitioner wilfully violated his oath and duties as an attorney in the following regards: (1) he failed to support the law (Bus. & Prof. Code, § 6068, subd. (a)); (2) he violated the "duties" of Business and Professions Code section 6103; (3) he failed to refrain from acts involving moral turpitude, dishonesty, or corruption (*id.*, § 6106); and (4) he gave or lent something of value to a judge, official, or employee of a tribunal (Rules Prof. Conduct, former rule 7-108(A)).

In the amended decision the hearing panel also presented a discussion, which contains findings of fact and conclusions of law. That discussion is as follows.

"[Petitioner's] attitude and demeanor during the hearing, together with letters of recommendation from a variety of people who knew and had worked with him or against him, were impressive. The fact that he had no prior disciplinary record is *not,* in that his admitted misconduct dates back many years.

"The admitted acts of misconduct of the [petitioner] detailed in Counts I, II and III all involved moral turpitude, dishonesty or corruption and demonstrate [petitioner's] complete contempt for his professional duties and responsibilities. Such misconduct would in each instance call for severe discipline of at least actual suspension from the practice of law for not less than one (1) year. In mitigation, as to these counts, he was candid and cooperative with the State Bar.

"The deciding factor, however, as to the proper discipline is that he was culpable in paying or loaning $400.00 to Tarrish—with no written evidence that it was a loan and no expectation of having money returned to him. What he expected and got was special treatment for his clients from a Hearing Office[r] of the Department of Motor Vehicles of the State of California.

"While Tarrish, previously convicted by guilty plea of bribery, was not an admirable character, he was convincing and this court found him to be a credible witness.

"The Court is well aware of the serious consequences of depriving a lawyer of his ability to practice his chosen profession. But [petitioner's] conduct, as set forth in Count Four and proven by clear and convincing evidence, demands the severest possible discipline."

Accordingly, in the amended decision the hearing panel recommended that petitioner be disbarred as discipline for his professional misconduct. It also recommended that he be directed to comply with the requirements imposed on disbarred attorneys by California Rules of Court, rule 955, within 30 days of the effective date of imposition of discipline.

At petitioner's request, the review department considered the decision of the hearing panel. By a vote of 14-0 with 1 member not voting, the department adopted the panel's findings of facts and conclusions of law, including those contained in the discussion. And by a vote of 15-0, it recommended that petitioner be disbarred as discipline for his professional misconduct. It also recommended that he be directed to comply with the requirements of California Rules of Court, rule 955, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, of the effective date of imposition of discipline.

Thereupon, petitioner filed in this court a petition for writ of review of the State Bar's recommendation, and we ordered the writ to issue.

## II. Discussion

■ In disciplinary matters we independently examine the record in its entirety, weigh the evidence, and determine the appropriate discipline to be imposed. (E.g., *Prantil* v. *State Bar* (1979) 23 Cal.3d 243, 246 [152 Cal.Rptr. 351, 589 P.2d 859] [stating that "This court must independently examine the record, reweigh the evidence, and pass on its sufficiency"]; *Gordon* v. *State Bar* (1982) 31 Cal.3d 748, 757 [183 Cal.Rptr. 861, 647 P.2d 137] [stating that "we exercise our independent judgment in determining the appropriate punishment for professional misconduct"].) Accordingly, we are bound neither by the findings of fact of the State Bar (e.g., *Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 708 [224 Cal.Rptr. 738, 715 P.2d 699]), nor by its conclusions of law (see *In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97]), nor by its recommendation as to discipline (see, e.g., *Rodgers* v. *State Bar* (1989) 48 Cal.3d 300, 316 [256 Cal.Rptr. 381, 768 P.2d 1058]). Nevertheless, "the burden is upon the petitioner to show wherein the decision or action [of the State Bar] is erroneous or unlawful." (Bus. & Prof. Code, § 6083, subd. (c).) ■ "Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys." (*Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 514 [153 Cal.Rptr. 24, 591 P.2d 47].)

It is petitioner's contention that the recommendation of disbarment is erroneous. His first claim is that the recommendation is excessive insofar as it depends on the Washington, Beery, and Erhardt matters alone. But it is plain that disbarment does *not* depend on those matters alone.

Second, petitioner claims that the recommendation is excessive insofar as it depends on the Tarrish matter alone. This point rests on three broad arguments.

■ Petitioner initially argues that the findings of fact relating to the Tarrish matter are infirm. His attack is directed in part to the facts actually found. He asserts at the threshold that the findings may have been based on an adverse inference drawn by the hearing panel from his decision not to testify to avoid waiving any Fifth Amendment privilege; to draw such an inference, however, is violative of the privilege; therefore, the findings are constitutionally unsound. We are not persuaded. There is nothing that supports petitioner's assertion other than sheer speculation. The panel made it plain that it would not draw an adverse inference unless the examiner persuaded it that it could constitutionally do so. There is no evidence that shows or suggests that the examiner did in fact persuade the panel.

Petitioner next asserts that the findings are unsound because they are based on the testimony of Tarrish, who (he says) is not worthy of credit. This assertion is no more persuasive than the preceding. We recognize that there is good reason to carefully and critically scrutinize the testimony of Tarrish. The hearing panel recognized this fact as well. But after such scrutiny it proceeded to find that Tarrish, although "not an admirable character," was a "convincing" and "credible" witness. ■ It is the rule that "where credibility of witnesses is concerned, the findings of the hearing panel, which actually saw and heard the witness, are entitled to great weight." (*Franklin* v. *State Bar, supra,* 41 Cal.3d at p. 708.) ■ We discern no reason to adopt a finding different from that of the panel. Tarrish told a believable story in a believable manner. Petitioner claims Tarrish's testimony is uncorroborated. He is wrong: independent evidence in the form of petitioner's credit card statements connect petitioner with a number of the lunches described in Tarrish's testimony.

Petitioner then asserts that the finding that "What he expected and got [for the $400 he passed to Tarrish] was special treatment for his clients" is infirm as unsupported. The point is empty: the finding is amply supported as even a cursory review of the record demonstrates. Petitioner claims that there is insufficient evidence to show that he specifically requested, or Tarrish specifically promised, special treatment for specific clients, or that the money passed directly influenced any specific decision. But it is of no consequence that evidence of specific requests, specific promises, and direct influence may be lacking. The record establishes beyond peradventure that petitioner spoke about his clients, money passed, and Tarrish acted favorably. Moreover, Tarrish expressly testified that the money influenced his decisions. In our view, the foregoing practically compels the finding under review and at the same time makes it proof against challenge.

Petitioner's attack on the findings is also directed to facts *not* found. He asserts that the hearing panel should have determined whether the money passed to Tarrish should be characterized as a "gift" or a "loan." We are not persuaded. In view of the charges brought, all that matters is that petitioner passed something of value to Tarrish. This is especially so when, as here, the transactions can be characterized most favorably to petitioner as—in petitioner's own words—"putative loans, that is a loan given with no expectation of repayment."

Petitioner also asserts that the hearing panel should have determined whether Tarrish solicited the payments. Reading the findings in light of the record, we believe the panel impliedly determined that Tarrish did indeed

solicit the money. But in any event, as declared above, all that matters here is that petitioner passed something of value to Tarrish.

Petitioner's second argument is that the findings of fact relating to the Tarrish matter do not support the determination of culpability. He asserts that the findings may have been based on an adverse inference drawn from his decision not to testify to avoid any waiving Fifth Amendment privilege. The point must be rejected: its premise, as shown above, is unsound.

Petitioner next asserts that the findings were based on the testimony of Tarrish alone. This point too must be rejected: it is not apparent, and certainly petitioner does not show, how this fact could affect the determination of culpability.

Petitioner also asserts that the money passed constituted a loan and not a gift. But whether loan or gift it was a bribe in substance and effect.

Finally, petitioner asserts that evidence was lacking as to specific requests for special treatment on his part, specific promises of such treatment on Tarrish's, and direct influence on specific decisions. Lack of such evidence, however, is of no consequence. What is crucial here is the fact, stated above, that the passing of the money amounted in substance and effect to a bribe.

■ Petitioner's third argument is that the determination of culpability as to the Tarrish matter does not support disbarment. At the threshold he again asserts that the findings of fact are infirm. We again reject the claim. He then asserts what appears to be a "defense" rooted in the "enormous" "pressure" Tarrish allegedly placed on him and the "ethical dilemma" he allegedly caused him to face: he could have chosen to pass money to Tarrish to avoid the risk of harm to his clients, but thereby engage in professional misconduct; or he could have chosen not to pass money to him to avoid professional misconduct, but thereby run the risk of harm to his clients. To our mind, such a "defense" is reducible to "good motive." And, of course, "the general rule [is] that good motive is no defense . . . ." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 394, p. 453.) In any event, the record does not support the applicability of the "defense." Hence, we reject the argument. (See std. 2.3, Rules Proc. of State Bar, div. V, Standards for Atty. Sanctions for Prof. Misconduct ["Culpability of a member of an act of moral turpitude, fraud, or intentional dishonesty toward a court, client or another person . . . shall result in actual suspension or disbarment depending upon the extent to which the victim of the misconduct is harmed or

misled and depending upon the magnitude of the act of misconduct and the degree to which it relates to the member's acts within the practice of law."].)

■ Third, petitioner claims that the recommendation of disbarment is excessive in light of the mitigating circumstances established in the record. We have recognized, and weighed, the evidence bearing on mitigation. But having considered the charges brought and proved, we conclude that such evidence does not render disbarment inappropriate.

Fourth, petitioner claims that disbarment is excessive in view of the purpose of discipline. We disagree. The purpose of discipline is to protect the public, the courts, and the legal profession. (See, e.g., *Chasteen* v. *State Bar* (1985) 40 Cal.3d 586, 591 [220 Cal.Rptr. 842, 709 P.2d 861].) To assure adequate protection, disbarment is required here: by his serious and repeated violations petitioner has shown that his continued practice of law would pose a threat to the public, the courts, and the profession.

Finally, petitioner claims that disbarment is excessive in comparison with sanctions imposed in similar cases. ■ As a general rule, of course, similar sanctions should be imposed on similar facts. "However, the imposition of discipline does not issue from a fixed formula. Each case must be decided on its own merits based on a balanced consideration of all relevant factors. [Citation.] While we may consider the discipline imposed in previous, similar cases in arriving at the appropriate sanction, past disciplinary practices are not binding on this court." (*Levin* v. *State Bar* (1989) 47 Cal.3d 1140, 1150 [255 Cal.Rptr. 422, 767 P.2d 689].) ■ After independent review, we conclude that the disbarment of petitioner is not out of line with the discipline imposed on other members of the bar in similar cases.

In conclusion, we have independently reviewed the findings of fact and conclusions of law made by the hearing panel and adopted by the review department. We are of the opinion that the findings and conclusions are sound and adopt them as our own except in the following regards. Petitioner's misconduct in the Washington, Beery, and Erhardt matters plainly did not amount to a wilful violation of his oath and duties as an attorney to support the law within the meaning of Business and Professions Code section 6068, subdivision (a). Nor did his misconduct in any of the matters amount to a wilful violation of his oath and duties not to violate the "duties" of Business and Professions Code section 6103: the provision defines no duties (*Baker* v. *State Bar, ante,* 804, at pp. 814-815 [263 Cal.Rptr. 798, 781 P.2d 1344].) We have also independently reviewed the

recommendation of disbarment made by both the hearing panel and the review department. We conclude that the recommendation is sound and should be followed.

## III. DISPOSITION

It is ordered that petitioner Barry Gerald Sands be disbarred and that his name be stricken from the roll of attorneys in this state. It is further ordered that he comply with the requirements of rule 955 of the California Rules of Court and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, of the effective date of this order. (Failure to comply with rule 955 may result in imprisonment. (Bus. & Prof. Code, § 6126, subd. (c).)) This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

Petitioner's application for a rehearing was denied January 24, 1990.