[No. S012448. Oct. 1, 1990.]

DEBORAH L. MIDDLETON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Deborah L. Middleton, in pro. per., and Brian C. Davis for Petitioner.

Diane C. Yu, Richard J. Zanassi, Major Williams, Jr., Starr Babcock, Sr., and Patricia L. Cummings for Respondent.

**OPINION**

**THE COURT.**—In this proceeding under section 6083, subdivision (a), of the Business and Professions Code and rule 952(a) of the California Rules of Court, we review the decision of the State Bar recommending that petitioner Deborah L. Middleton be disciplined for several instances of professional misconduct.[1]

A hearing panel of the State Bar Court (hereafter the hearing panel or panel) recommended that petitioner should be suspended from the practice of law for four years, that her suspension should be stayed, and that she should be placed on probation for four years on conditions including actual suspension for one year.

The Review Department of the State Bar Court (hereafter the review department or department) recommended by a vote of nine to four that petitioner should be suspended from the practice of law for five years, that her suspension should be stayed, and that she should be placed on probation for five years on conditions including actual suspension for two years and until she shows proof satisfactory to the State Bar Court of her

---

[1] New Rules of Professional Conduct became effective May 27, 1989. Unless otherwise indicated, all Rules of Professional Conduct citations refer to the former rules, effective January 1, 1975, as they were in effect at the times relevant herein.

rehabilitation, fitness to practice, and learning and ability in the general law. The dissenting members of the department would have recommended disbarment.

As we shall explain, we conclude that in view of the purpose of professional discipline, viz., the protection of the public, the courts, and the legal profession, the review department's recommendation is appropriate, whereas those of the hearing panel and the review department dissenters are, respectively, inadequate and excessive. We shall therefore suspend petitioner from the practice of law for five years, stay her suspension, and place her on probation for five years on conditions including actual suspension for two years and until she shows satisfactory proof of her rehabilitation, fitness to practice, and learning and ability in the general law.

## I. PROCEEDINGS BEFORE THE STATE BAR COURT

Petitioner was admitted to the practice of law in this state as a member of the State Bar on May 30, 1980. She has a record of prior discipline.

On October 17, 1988, the Office of Trial Counsel of the State Bar (hereafter the Office of Trial Counsel) filed in the Hearing Department of the State Bar Court a notice to show cause charging petitioner with five counts of professional misconduct relating to matters involving Robert W. and Sherry D. Fields (count I), Ronnie L. Woodard (count II), Karen Baptista (count III), Virginia McGee (count IV), and a State Bar investigation of complaints made by the Fields, Woodard, Baptista, and McGee (count V). The notice advised that (1) a default could be entered for failure to file a written answer within 20 days after service or for failure to appear at the formal hearing; (2) entry of default could result in the misconduct charged being deemed admitted, and in the recommendation or imposition of discipline based on such admitted misconduct; and (3) entry of default would bar further participation in the proceedings unless and until the default was set aside on timely and sufficient motion.

On October 19, 1988, the Office of Trial Counsel served the notice to show cause on petitioner by certified mail, return receipt requested, at her address of record. It was evidently on October 20 that delivery was first attempted. Delivery, however, was never accepted.

On November 8, 1988, the State Bar Court filed a notice of time and place for hearing. On November 9 it served a copy on the parties. Petitioner subsequently admitted receipt.

On November 30, 1988, the Office of Trial Counsel served on petitioner by certified mail, return receipt requested, at her address of record, a notice

of application to enter default for failure to file an answer to the notice to show cause. Attached thereto was a copy of the notice to show cause. It was evidently on December 1 that delivery was first attempted. Delivery, however, was never accepted. Also on December 1, the Office of Trial Counsel filed the notice of application to enter default.

On December 28, 1988, the State Bar Court filed a notice of entry of default against petitioner. The notice advised that (1) default had been entered for failure to file a written answer to the notice to show cause; (2) the misconduct charged had been deemed admitted and discipline could be recommended or imposed; and (3) further participation was prohibited unless and until the default was set aside on timely and sufficient motion. That same day, the State Bar Court served the notice on petitioner by certified mail, return receipt requested, at her address of record. On December 29, it filed and served an amended—but substantially identical—notice of entry of default. Pursuant to the original notice, the due date for any motion to set aside the default was March 13, 1989; pursuant to the amended notice, the due date was March 14, 1989. Petitioner subsequently admitted receipt of the original notice.

On February 23, 1989, a default hearing was held. Petitioner did not appear. The Office of Trial Counsel successfully moved to dismiss the charge relating to the McGee matter in count IV as not supported by sufficient evidence. It also successfully moved to deem the misconduct alleged in the other charges admitted by reason of petitioner's failure to answer or appear. It then proceeded to present evidence and argument relating to such misconduct. As discipline it requested disbarment.

On March 14, 1989, the decision of the hearing panel was filed. The panel made findings of fact and conclusions of law, and recommended discipline consisting of suspension for four years, with a stay of suspension and imposition of probation for four years on conditions including actual suspension for one year. That same day, the decision was served on petitioner. She subsequently admitted receipt.

On March 29, 1989, the Office of Trial Counsel filed a request for review "on the grounds that the level of recommended discipline is insufficient."

On or about April 10, 1989, petitioner submitted a motion to set aside the default, alleging in substance improper service, lack of actual notice, and good cause to excuse her failure to answer the notice to show cause. The motion was not filed because it was untimely.

On July 11, 1989, the decision of the review department was filed. The department modified the hearing panel's findings of fact and conclusions of

law in respects not worthy of note, and adopted the findings and conclusions as so modified. Read in light of the record and with minor errors corrected, the findings and conclusions are in substance as follows.

With regard to count I, on January 21, 1986, Robert W. and Sherry D. Fields retained petitioner to prepare and file a petition in bankruptcy; they paid her $250 for fees and $60 for costs. On January 31 Sherry made an appointment to meet with petitioner on February 8 to furnish information for the bankruptcy petition; petitioner wilfully failed to keep the appointment. Sherry made a number of telephone calls to petitioner; petitioner wilfully and repeatedly failed to call back. Sherry eventually made an appointment to meet with petitioner on February 26. On that date Robert and Sherry met with petitioner and brought documents she needed to prepare and file the bankruptcy papers. Petitioner promised the couple that she would submit the bankruptcy petition the next day and that she would take steps to prevent an automatic deduction from their bank account scheduled for March 5; with reckless disregard, she failed to keep her word. On March 24 Sherry demanded that petitioner file the bankruptcy petition by March 25 or refund her money. On March 26 petitioner filed the petition; the papers contained significant errors, including the omission of certain debts. Robert and Sherry demanded return of the fees paid, but petitioner refused. On March 31 petitioner wrote a letter to Sherry stating that she intended to sue her and Robert for money damages and a restraining order because she claimed they had caused her annoyance.

In the Fields matter, petitioner wilfully violated her oath and duties as an attorney in the following particulars: (1) she failed to "support the Constitution and laws of the United States and of this State" (Bus. & Prof. Code, § 6068, subd. (a)); (2) she violated the "duties" of Business and Professions Code section 6103; (3) she failed to competently perform legal services, intentionally, with reckless disregard, or repeatedly (Rules Prof. Conduct, rule 6-101(A)(2)); and (4) she undertook or continued representation in matters in which she knew she could not competently perform legal services (*id.*, rule 6-101(B)(1)).

As to count II, on March 5, 1984, Ronnie L. Woodard retained petitioner to represent him in an action for wrongful discharge based on so-called "reverse discrimination"; under their agreement, he paid $500 as an advance for fees and $100 for costs; petitioner would receive 33 percent of any final settlement as her fee and would herself pay all costs over and above $100 subject to reimbursement. Petitioner telephoned Woodard's former supervisor and threatened him with a $10 million lawsuit if Woodard was not reinstated; she wrote a letter to Woodard's former employer threatening suit for the same amount for wrongful discharge. On April 3 petitioner met

with Woodard and stated she was not going to deal with the Equal Employment Opportunity Commission (hereafter the EEOC). The next day, petitioner again met with Woodard and asked him to explain what the EEOC was. The following day, petitioner filed an informal complaint with the EEOC. On April 26 Woodard met with an EEOC officer and learned that he had 15 days to file a formal complaint. He took what were evidently complaint forms to petitioner. On May 3 he reminded her of the deadline; she said she had sent the forms to him on that date, but she had not done so.

On May 17 Woodard retained another attorney. On June 6 he filed a complaint against petitioner with the local bar association. At a hearing petitioner stated she had been retained by Woodard to investigate an employment discrimination matter and not to represent him in a wrongful discharge action. Woodard's new attorney made attempts to secure petitioner's client file; petitioner wilfully failed to transmit the file for more than three years. The EEOC made a final ruling that Woodard had indeed been wrongfully discharged as a result of discrimination, and ordered him reinstated.

In the Woodard matter, petitioner wilfully violated her oath and duties as an attorney in the following particulars: (1) she failed to "support the Constitution and laws of the United States and of this State" (Bus. & Prof. Code, § 6068, subd. (a)); (2) she violated the "duties" of Business and Professions Code section 6103; (3) she failed to competently perform legal services, intentionally, with reckless disregard, or repeatedly (Rules Prof. Conduct, rule 6-101(A)(2)); and (4) she undertook or continued representation in matters in which she knew she could not competently perform legal services (*id.*, rule 6-101(B)(1)).

With regard to count III, on October 29, 1987, petitioner represented the husband of Karen Baptista in a marriage dissolution proceeding; she knew that Baptista was represented by counsel. On that date, petitioner telephoned Baptista and discussed matters involved in the proceeding—but without the consent of Baptista's counsel.

In the Baptista matter, petitioner wilfully violated her oath and duties as an attorney by communicating with an adverse party represented by counsel (Rules Prof. Conduct, rule 7-103).

As noted, count IV, which concerned Virginia McGee, was dismissed on the ground that there was insufficient evidence to support the allegations of misconduct contained therein.

Finally, as to count V, on August 12, 1986, the State Bar wrote to petitioner at her address of record; it advised her of a complaint by

Woodard and requested a written response by August 27; petitioner evidently received the letter, but she wilfully failed to respond. On August 22 the State Bar wrote to petitioner at her address of record, advised her of a complaint by the Fieldses, and requested a written response by September 11; petitioner evidently received the letter, but she wilfully failed to respond. On September 29 in separate letters the State Bar again wrote to petitioner at her address of record about the Woodard and Fields complaints; each letter requested a written response by October 15; petitioner evidently received each letter, but she wilfully failed to respond. On October 2 the State Bar wrote to petitioner at her address of record, advised her of a complaint by McGee, and requested a written response by October 24; petitioner evidently received the letter, but she wilfully failed to respond. On January 20, 1988, the State Bar wrote to petitioner at her address of record, advised her of a complaint by Baptista, and requested a written response by February 8, 1988; petitioner evidently received the letter, but she wilfully failed to respond.[2]

In the course of the State Bar investigation, petitioner wilfully violated her oath and duties as an attorney in the following particulars: (1) she failed to "support the Constitution and laws of the United States and of this State" (Bus. & Prof. Code, § 6068, subd. (a)); (2) she failed to cooperate and participate in disciplinary investigations and proceedings (*id.*, § 6068, subd. (i)); and (3) she violated the "duties" of Business and Professions Code section 6103.

It was noted that petitioner had a record of prior discipline. On January 23, 1985, she was suspended from the practice of law for one year, execution was stayed, and she was placed on probation for one year on conditions including actual suspension for one month. Discipline was imposed for three instances of misconduct in 1980—the very year she was admitted to practice. Representing a landlord in an unlawful detainer action, petitioner served a tenant with a notice to vacate that was without judicial authority. Representing another landlord in another unlawful detainer action, she mailed to a tenant an unendorsed writ of execution for possession of real property at a time when it was stipulated no such writ should issue. And representing yet another landlord in yet another unlawful detainer action, she mailed a letter to tenants stating falsely that a judgment had been entered and judicial authority had issued for a valid writ of possession.

There were no circumstances in mitigation "other than [petitioner] was admitted in the year 1980." There were several circumstances in aggravation.

---

[2] At oral argument, petitioner admitted through counsel that she had indeed received all the letters in question and had wilfully failed to respond to any.

"On March 31, 1986, [petitioner] wrote to Mrs. Fields and threatened her with [a] suit for [a] restraining order and money damages after Mrs. Fields had requested a return of the fees paid. This action on the part of [petitioner] was to try to scare Mrs. Fields from taking action to recover money from [petitioner]. At one point [petitioner] told the Fields[es] they were 'acting like babies.'

"In the Woodard case, [petitioner] told her client that she did not want to 'fool with' the EEOC but instead would file a suit in federal court.

"On March 23, 1984, [petitioner] in her client's presence telephoned the former employer and demanded Mr. Woodard's annual leave check. [Petitioner] yelled at a woman in the personnel office and told her to 'get off her ass and mail the check.'

"At a . . . hearing before the [local bar association, petitioner] maintained that she had not been asked to represent Mr. Woodard on a wrongful discharge case but only to investigate an employment discrimination matter. This is in direct conflict with [petitioner's] letter . . . to her client's former employer where she threatened suit for 'wrongful discharge.' In said letter . . . , [petitioner] wilfully misstated the date her client had come to see her.

"Although [petitioner] failed to pick up the certified mail from the State Bar containing the Notice to Show Cause and the Application to Enter Default, it is clear that she knew of the pendency of these proceedings and deliberately avoided making a formal appearance and responding to letters asking her for some explanation of her misconduct. [Citations.]

"On or about February 15, 1989, [petitioner] spoke to Mina Ruiz, Deputy Clerk in the State Bar Court office in Los Angeles, and requested copies of all pleadings in this proceeding. [Petitioner] was advised that her default had been entered. [Petitioner] said that she had no intention of 'wasting her time appearing at the hearing.'

"In [a] letter of January 27, 1989 to the Clerk of the State Bar Court, [petitioner] acknowledged she received [the] 'Notice of Hearing' and 'Notice of Entry of Default' in this matter."

In conclusion, the following discussion was presented. "[Petitioner] has a prior record of multiple acts of wrongdoing in 1980 and the present misconduct evidences again multiple acts of wrongdoing that occurred in 1984, 1986, 1987 and 1988. The [petitioner's] misconduct harmed significantly the Fields[es] and Mr. Woodard. It also harmed the public and the

administration of justice . . . . [¶] [Petitioner's] failure to cooperate with the State Bar in its investigation of the charges against her and her deliberate action to avoid appearing in this proceeding flouts the authority of the State Bar of California. [¶] The aggravating circumstances warrant a greater degree of sanction than that set forth in the [Standards for Attorney Sanctions for Professional Misconduct (div. V, Rules Proc. of State Bar)] for the particular acts of misconduct."

In view of the foregoing findings of fact and conclusions of law, the review department recommended by a vote of nine to four that petitioner should be suspended from the practice of law for five years, that her suspension should be stayed, and that she should be placed on probation for five years on conditions including actual suspension for two years and until she shows satisfactory proof of her rehabilitation, fitness to practice, and learning and ability in the general law. The department stated that "its reasons for recommending greater discipline than recommended by the hearing panel are: the prior and present disciplinary proceedings show a pattern of similar misconduct; [petitioner] failed to cooperate in the present disciplinary proceedings and [petitioner's] prior discipline has been ineffective in making her adequately aware of her duties as an attorney in her relatively short time in law practice."

The dissenting members of the review department would have recommended disbarment. They were of the view that "the degree of discipline recommended is insufficient for the following reasons: 'Prior, similar discipline for similar misconduct did not protect the public. The only remedy that can protect the public is disbarment since previous, supervised probation was ineffective. Further, disbarment is called for by the application of Standard 2.4(a), Standards for Attorney Sanctions for Professional Misconduct[: "Culpability of a member of a pattern of wilfully failing to perform services demonstrating the member's abandonment of the causes in which he or she was retained shall result in disbarment."].' "

On or about June 27, 1989, petitioner submitted an application for leave to file out of time her motion to set aside the default. On August 7 the State Bar Court filed an order that at once granted leave and denied the motion on the ground that petitioner's "papers disclose that she was properly served, that she had actual notice of the proceeding, and that there was no good cause for her failure to timely answer or move to set aside the default."

On October 13, 1989, petitioner filed a petition for writ of review of the State Bar's recommendation.[3] On November 1, 1989, we ordered the writ to issue.

## II. PROCEEDINGS ON REVIEW

■ "In disciplinary matters we independently examine the record in its entirety, weigh the evidence, and determine the appropriate discipline to be imposed. [Citations.] Accordingly, we are bound neither by the findings of fact of the State Bar [citation], nor by its conclusions of law [citation], nor by its recommendation as to discipline [citation]. Nevertheless, 'the burden is upon the petitioner to show wherein the decision or action [of the State Bar] is erroneous or unlawful.' [Citation.] 'Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys.' " (*Sands* v. *State Bar* (1989) 49 Cal.3d 919, 928 [264 Cal.Rptr. 354, 782 P.2d 595].)

Petitioner contends the recommendation of discipline is erroneous. In support, she claims the recommendation is unsupported as a matter of law. She maintains that "An attorney accused of misconduct is entitled to reasonable notice and a reasonable opportunity to defend against the charges which have been made against her." She asserts she did not receive such notice and opportunity.

Petitioner first argues that she was not properly served with the notice to show cause because (she says) she was not given actual notice, and hence that the State Bar Court was without jurisdiction in this matter.

■ But "actual notice is [not] a necessary element of proper service in disciplinary proceedings." (*Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1186 [248 Cal.Rptr. 830, 756 P.2d 217]; see *Bowles* v. *State Bar* (1989) 48 Cal.3d 100, 107 [255 Cal.Rptr. 846, 768 P.2d 65].)

Section 6002.1, subdivision (c), of the Business and Professions Code (hereafter section 6002.1(c)) provides as relevant here: "The notice initiating a [disciplinary] proceeding . . . may be served upon the member or former member of the State Bar to whom it is directed by certified mail, return receipt requested, addressed to the member or former member at the latest address shown on the official membership records of the State Bar. The service is complete at the time of the mailing . . . ."

---

[3] It appears that as of the time of filing, petitioner was unaware that the review department had considered the decision of the hearing panel and had recommended more severe discipline.

Rule 243 of the former Rules of Procedure of the State Bar (hereafter rule 243), which was in effect at the times relevant herein, stated in pertinent part: "A notice initiating a formal [disciplinary] proceeding . . . may be served upon the member as provided in Business and Professions Code section 6002.1(c); that is by certified mail, return receipt requested, addressed to the member or former member at the latest address shown on the official membership records of the State Bar. The service is complete at the time of the mailing . . . ."

The Office of Trial Counsel satisfied the requirements of section 6002.1(c) and rule 243. By doing so, it effected proper service. (See *Lydon* v. *State Bar, supra,* 45 Cal.3d at p. 1186.)

Against our conclusion, petitioner maintains that section 6002.1(c) and rule 243 impliedly require actual receipt to complete service. They plainly do not. Each states: "The service is complete at the time of the mailing . . . ." Petitioner relies on Code of Civil Procedure section 415.30. But that provision, which governs service by mail of a summons in a civil action, is clearly inapposite.

Petitioner then maintains that section 6002.1(c) and rule 243 should not apply when—as allegedly here—the attorney involved is not at fault. We can discern no satisfactory basis for the exception now urged. In any event, on this record we simply cannot conclude that petitioner was not at fault. Indeed, we agree with the review department's implied conclusion that she "deliberately avoided" service. Petitioner asserts that the "notice to show cause was sent to [her] while she was on vacation out of state and so had no opportunity to accept delivery": "On October 25, 1988, I went on vacation for three weeks, returning November 15, 1988. During the last week of said vacation, I was out of state." But as noted above, it is evident that delivery was first attempted *on October 20, 1988,* almost a week before she assertedly left for vacation and almost three weeks before she assertedly departed the state.

Petitioner next maintains that section 6002.1(c) and rule 243 should not apply when—as allegedly here—the Office of Trial Counsel acts with an intent to prevent actual notice of the charges and participation in the proceeding. But there is simply no credible support for petitioner's charge of bad faith. Petitioner claims the Office of Trial Counsel attempted to mislead and deceive the State Bar Court about service of the notice to show cause and other documents. Her assertion is altogether without basis in the record.

Finally, petitioner seems to maintain that at least as applied in her case, section 6002.1(c) and rule 243 violate the guaranties of due process of law

contained in the Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a), of the California Constitution. Her attack, however, is perfunctory. So is our rejection: petitioner received all the process to which she was constitutionally due.

Petitioner also argues that the State Bar Court erroneously denied her motion to set aside the default. As noted, the State Bar Court reasoned in support of its ruling that petitioner's "papers disclose that she was properly served, that she had actual notice of the proceeding, and that there was no good cause for her failure to timely answer or move to set aside the default." Having reviewed the record, we conclude that the reasoning is sound and the ruling is proper. Petitioner disputes the determination that her "papers disclose . . . that she had actual notice of the proceeding . . . ." But in a declaration in support of her motion, she stated that evidently around mid-November 1988 she "received the Notice of Time and Place of Hearing . . . ." Petitioner may perhaps be understood to claim that she did not have actual notice *of the specific charges.* But the asserted lack of actual notice cannot justify or excuse petitioner's conduct. Moreover, she herself admits that she had received "a copy of the charges against her . . . ten days" before any motion to set aside the default was due. We agree with the State Bar Court that "there was no good cause for the failure to timely . . . move to set aside the default."

In a word, petitioner was afforded adequate notice of the charges and an adequate opportunity to mount a defense. She was entitled to nothing more.

█ Petitioner next claims, in a somewhat perfunctory fashion, that the discipline recommended is excessive.

Of course, "The purpose of discipline is to protect the public, the courts, and the legal profession." (*Sands* v. *State Bar, supra,* 49 Cal.3d at p. 931.)

Petitioner's misconduct was unquestionably serious. Petitioner argues to the contrary. But the fact is that in the Fields and Woodard matters, she displayed habitual disregard of her clients' interests. Such conduct "justifies severe discipline." (*Trousil* v. *State Bar* (1985) 38 Cal.3d 337, 342 [211 Cal.Rptr. 525, 695 P.2d 1066].) Moreover, throughout this proceeding and the antecedent investigation petitioner has wilfully failed to cooperate or participate. Indeed, as noted she deliberately avoided service. It seems plain that she acted as she did with the intent thereafter to challenge the jurisdiction of the State Bar Court. Of course, wilful failure to cooperate or participate in disciplinary investigations or proceedings itself supports discipline, even severe discipline. Indeed, in *Chang* v. *State Bar* (1989) 49 Cal.3d 114,

128 [260 Cal.Rptr. 280, 775 P.2d 1049], we stated that "fraudulent and contrived misrepresentations to the State Bar may perhaps constitute a greater offense than misappropriation"—which itself generally warrants disbarment (e.g., *Friedman* v. *State Bar* (1990) 50 Cal.3d 235, 244 [266 Cal.Rptr. 632, 786 P.2d 359]).

Petitioner also argues that her record of prior discipline could not properly be considered because it was "too remote." The assertion is almost frivolous. The misconduct in the prior proceeding dates to 1980; the misconduct here began in 1984; the prior proceeding closed in 1985. Therefore, only a relatively brief period of time separates the present misconduct from the earlier. And no time at all separates the present misconduct from the earlier proceeding.

Petitioner's misconduct in the past discloses a significant threat of misconduct in the future. To deter such behavior, severe discipline is required. The two years' actual suspension recommended by the review department is consistent with the Standards for Attorney Sanctions for Professional Misconduct (see Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, former stds. 2.4(b), 2.10 (eff. Jan. 1, 1986)), and is altogether appropriate under the totality of the circumstances. Actual suspension for one year—as recommended by the hearing panel—would be inadequate to the threat posed by petitioner's misconduct. By contrast, disbarment—as favored by the dissenting members of the review department—appears to be excessive. Although serious, petitioner's misconduct does not reveal irremediable ethical deficiencies. Further, contrary to the dissenters' view, her failings do not demonstrate abandonment of her clients, merely disregard.

After independent review, we are of the opinion that the findings of fact and conclusions of law of the review department are sound and adopt them as our own, except in the following particulars.

■ First, petitioner's misconduct did not amount to wilful violation of the "duties" of Business and Professions Code section 6103. That provision defines no duties. (*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 815 [263 Cal.Rptr. 798, 781 P.2d 1344].)

Second, petitioner's misconduct cannot be held to constitute a wilful violation of her duty to "support the Constitution and laws of the United States and of this State." (Bus. & Prof. Code, § 6068, subd. (a).) We are unable to find in the record a sufficient factual basis for such a conclusion. "Once again we are constrained to call to the attention of the State Bar Court the importance of identifying with specificity both the rule or

statutory provision that underlies each charge and the manner in which the conduct allegedly violated that rule or statutory provision. While petitioner here does not complain of any due process violation in lack of notice, this specificity is also essential to meaningful review of the recommendation of the State Bar Court." (*Baker* v. *State Bar, supra,* 49 Cal.3d at p. 816.)

 We are also of the opinion that the discipline recommended by the review department is appropriate and should accordingly be imposed: to protect the public, the courts, and the profession, it is necessary to actually suspend petitioner from the practice of law for two years and until she shows satisfactory proof of her rehabilitation, fitness to practice, and learning and ability in the general law. We are not unmindful of the differing views of the hearing panel and the review department dissenters. But as a general matter, "we give great weight to the Review Department's disciplinary recommendation [citation]." (*Hartford* v. *State Bar* (1990) 50 Cal.3d 1139, 1154 [270 Cal.Rptr. 12, 791 P.2d 598].) On independent review, we find no reason to depart from its recommendation in this matter.

## III. Disposition

It is ordered that petitioner Deborah L. Middleton be suspended from the practice of law in the State of California for a period of five years from the date on which this decision becomes final; that execution of the order of suspension be stayed; and that petitioner be placed on probation for a period of five years, subject to the conditions adopted by the Review Department of the State Bar Court in its decision in In the Matter of Deborah L. Middleton, State Bar Court No. 85-O-18705, filed July 11, 1989, including without limitation the following: for the first two years of said probationary period and until she shows proof satisfactory to the State Bar Court of her rehabilitation, fitness to practice, and learning and ability in the general law, she shall be actually suspended from the practice of law in the State of California.

It is further ordered that petitioner take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners prior to the expiration of the period of her actual suspension from the practice of law in the State of California.

It is also ordered that petitioner comply with the provisions of paragraphs (a) and (c) of rule 955 of the California Rules of Court within 30 days and 40 days, respectively, of the date on which this decision becomes final.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

**LUCAS, C. J.,** Dissenting.—I agree with the review department dissenters and believe disbarment is appropriate. In my view, the prior discipline for petitioner's acts of misconduct that occurred in 1980, the same year she was admitted to the Bar, was ineffective. Petitioner simply fails to comprehend the seriousness of her misconduct. Her attitude toward her clients and the bar shows a pattern of callous disregard for professional standards. As the majority observes, petitioner continues to make frivolous assertions in defense of her unprofessional behavior. For example, she claims her record of prior misconduct cannot be considered by the court in the present matter because it is "too remote." As the majority points out, petitioner's failure to learn from past mistakes indicates a significant risk of misconduct in the future.

Petitioner also asserts that the office of trial counsel intentionally prevented her participation in the disciplinary proceedings. As the majority observes, there is no credible support for this claim. In my view, petitioner's habitual disregard of her clients' interests and her willful failure to cooperate or participate in the disciplinary proceedings support disbarment. I would impose such discipline pursuant to standard 2.4(a), Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V).

Eagleson, J., and Arabian, J., concurred.